Thomas Patrick WALSH,
Plaintiff-Appellant,

v.

Lou V. BREWER, et al.,
Defendants-Appellees.

No. 83–1059.

Argued Jan. 18, 1984.
Decided May 3, 1984.

Benjamin S. Wolf, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Laurel Black, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before BAUER and FLAUM, Circuit Judges, and SWYGERT, Senior Circuit Judge.

BAUER, Circuit Judge.

Plaintiff Walsh claims that six Stateville Correctional Center officials violated his eighth and fourteenth amendment rights.* Walsh is currently an inmate at the Menard Correctional Center. Walsh brought this action for damages under 42 U.S.C. § 1983 (1976) after he was assaulted by his cellmate at Stateville in 1979.

The district court held that the two defendants primarily responsible for inmate security at Stateville, Nicholas Mellas and Harry Martin, deprived Walsh of his constitutional rights, but were not liable to Walsh for damages. The court also held that the other four defendants did not violate Walsh's rights. Because the record before us does not clearly reflect the basis for the court's holding that Mellas and

---

* Although Walsh named Stateville Warden Lou Brewer as a defendant in this suit, Brewer left Stateville shortly after Walsh's assault and never was served. The issue of Brewer's liability thus is not before us.

Martin violated Walsh's constitutional rights, we vacate its decision and remand for further consideration. If the district court again determines that Mellas and Martin deprived Walsh of his constitutional rights, the court then should award appropriate damages. We affirm the court's holding with respect to the other four defendants.

## I

Walsh was incarcerated at Menard in 1973. While at Menard, Walsh helped officials repulse an attack on a prison office by inmate members of street gangs. After this incident, members of the Disciples and Vice Lords gangs at Menard threatened Walsh. Walsh later was released from Menard.

In 1978 Walsh was sent to Stateville to serve sentences for three felony convictions. Because Walsh feared that gang members at Stateville would retaliate against him for his role in the Menard incident, Walsh asked prison officials to put him in protective custody in Cell House E. The prison officials granted Walsh's request. Walsh still feared for his safety in Cell House E, though, and he asked to be transferred to another prison. Stateville officials denied his request. Walsh then asked to be placed on twenty-four hour lockup in Cell House B, which housed inmates who violated a prison rule or were awaiting a disciplinary committee hearing. Some inmates apparently believed that twenty-four hour lockup was more secure than protective custody, and thus they would commit a technical violation of prison rules to gain admittance to twenty-four hour lockup. In order to be assigned to Cell House B, therefore, Walsh improperly refused his cell assignment and was charged with a disciplinary violation. Walsh was placed in Cell House B on January 24 or 25, 1979.

Stateville officials regularly assigned two men to a cell in Cell House B. Before double-celling inmates guilty of rules violations, officials were required by regulation to determine the prisoners' compatibility by checking their prison files. Prison officials, however, did not apply this regulation to inmates awaiting disciplinary hearings. In these cases, the cell house keeper made double assignments based on his evaluation of the inmates' size and his experiences with the inmates.

The Cell House B keeper assigned Walsh to an empty cell. On January 25, the keeper assigned another inmate, Frank Lee, to Walsh's cell. Lee was a Vice Lords gang member. Defendant Edward Franklin, a lieutenant, took Lee to the cell. Walsh testified that he immediately asked Franklin not to put Lee in the cell; Franklin testified that he could not recall Walsh making such a request. Walsh stated at trial that early the next morning, Lee stabbed him in the back and strangled him into unconsciousness with a wire.

At noon, the prison Adjustment Committee came to Walsh's cell to adjudicate his disciplinary charge. Defendants Daniels, Drew, and Nelson were the committee members. Walsh testified that he showed the committee members his stab wounds and requested immediate medical attention. The defendants all testified that they neither saw stab wounds nor observed anything unusual about Walsh. The defendants did agree that Walsh asked to go to sick call, and Daniels stated that he conveyed Walsh's request to the cell house keeper in accordance with standard Stateville procedures.

Later that afternoon, Lee assaulted Walsh by repeatedly strangling him with a wire. Prison officials found Lee standing over Walsh with a wire around Walsh's neck. The officers sent Walsh first to the Stateville emergency room, and then to a hospital in Joliet for two days.

The district court found that Stateville's procedures, "by equating a plea for 24-hour lockup for increased protection from a faceless class of enemies to a 'voluntary' removal from protective custody, knowingly permitted the incarceration of an inmate in a locked cell with those he reasonably feared." R. 79, at 4. The court ruled that placing a gang member in Walsh's cell

constituted deliberate indifference toward Walsh's safety in violation of his eighth amendment right to be free from cruel and unusual punishment. The court held Mellas and Martin responsible for violating Walsh's rights.

The court nevertheless held that Mellas and Martin were not liable to Walsh for damages because the deprivation of Walsh's rights was not the proximate cause of the assault. The court stated: "Plaintiff does not suggest that Lee ever knew plaintiff was a Vice Lords target. The cause of the attack was unrelated to the 1973 Menard incident; Lee attacked Walsh, but not as a vengeful gang member." R. 79, at 5. The district court further ruled that prison officials would not have known that Lee was likely to attack Walsh for other reasons even if they had consulted Lee's files. The court noted that Lee's file showed that he had no history of assaultive behavior at Stateville. In addition, the court declined to assume that Lee's psychological evaluation, which described him as "sullen, antagonistic, angry, dangerous, explosive, completely peer-oriented," would have alerted officials that Lee was more dangerous than many of the other inmates at the Stateville maximum security facility.

Walsh does not contend that Lee's attack was related to the gang threats of retaliation. Instead, Walsh argues that prison officials should not have placed Lee in his cell because Lee was a gang member and because Lee's record showed that he was "unstable and violent." Walsh also claims that he is entitled to damages.

## II

We will overturn the district court's factual findings only if they are clearly erroneous. Fed.R.Civ.P. 52(a). Walsh contests the court's finding that prison officials would not have been alerted to the danger of placing Lee with another inmate had they examined Lee's file. Our examination of the record convinces us that the court's finding is not clearly erroneous.

We believe, however, that the district court's legal analysis is incomplete. The court does not explain adequately its basis for holding that Mellas and Martin violated Walsh's constitutional rights. The court held that although Lee's attack was not gang-related, exposing Walsh to the risk of gang attack by placing Lee in his cell constituted deliberate indifference to Walsh's rights.

Prison officials who show "deliberate indifference" to violent inmate attacks deprive inmates of their eighth amendment rights. *Little v. Walker*, 552 F.2d 193 (7th Cir.1977), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978). Although this guarantee generally is implicated only when an inmate is assaulted, risks to an inmate's safety alone may violate his rights when the threats are so constant that a virtual "reign of terror" exists. *See Murphy v. United States*, 653 F.2d 637 (D.C.Cir.1981); *Jones v. Diamond*, 636 F.2d 1364 (5th Cir.), *cert. dismissed*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981); *Withers v. Levine*, 615 F.2d 158 (4th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980). Although Walsh does not rely specifically on these cases, he does claim that "Mellas and Martin had knowingly permitted an atmosphere of lawlessness and violence to prevail at Stateville." Appellant's br. at 19. The district court's order does not discuss whether the evidence showed that the inmates at Stateville were exposed to an unconstitutionally high risk of harm, and thus we vacate and remand the court's decision for further consideration of the evidence. To show that the Stateville procedures were unconstitutional, the record must indicate either that assaults occurred so frequently that they were "pervasive," *Murphy*, 653 F.2d at 644, or that Walsh belonged to an "identifiable group of prisoners" for whom "risk of ... assault [was] a serious problem of substantial dimensions," *Withers*, 615 F.2d at 161. Absent either of these showings, the district court should hold that Mellas and Martin did not violate Walsh's constitutional rights.

If the record shows that Stateville's procedures were unconstitutional, the court then should award Walsh appropriate damages. Walsh has not sought injunctive or declaratory relief. He also is not entitled to compensation for injuries from Lee's attack, because the district court found that the attack did not result from any defects in Stateville's inmate assignment procedures. The court should consider compensation for harm, if any, resulting from the constitutional violation, and appropriate compensation for the constitutional violation itself. *See generally Lenard v. Argento,* 699 F.2d 874, 891 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983).

### III

The district court ruled that Defendants Franklin, Daniels, Drew, and Nelson did not violate Walsh's constitutional rights. We affirm these rulings.

Franklin's regular assignment as a lieutenant at Stateville was to escort inmates to their new cell assignments. The district court found that Franklin followed standard procedures in escorting Lee to Walsh's cell and "it is difficult to see how anything he did ... could give rise to the level of constitutional tort." Tr. at 448. Walsh claims that he asked Franklin not to place Lee in his cell. Even if Walsh's account is accurate, we decline to impose liability on Franklin merely because he did not grant Walsh's request. Franklin did not make cell assignments, and he apparently was unaware of the gang threats against Walsh.

The district court's ruling on the liability of Defendants Daniels, Drew, and Nelson hinged on its evaluation of witness credibility. The court acknowledged Drew's long experience with prisoner services and emphasized that none of the three defendants remembered seeing Walsh's stab wounds: "If Mr. Walsh had pulled up his shirt and his back was bloody and he had been stabbed, that certainly would be something that [the defendants] would not only recall but I believe they would have acted upon at the time." Tr. at 466. The court concluded that Walsh had conveyed "no sense of a medical emergency or a sense of grave personal threat" to the defendants, and thus the defendants did not violate Walsh's constitutional rights. Tr. at 466–67. We defer to the trial court on issues of credibility absent clear error. *Sherkow v. Wisconsin,* 630 F.2d 498 (7th Cir.1980). The record indicates that the trial court did not err in its evaluation, and thus we affirm its ruling.

### IV

We affirm the district court's ruling with respect to Defendants Franklin, Daniels, Drew, and Nelson. We vacate and remand that portion of the court's decision concerning Defendants Mellas and Martin for further consideration consistent with this opinion.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.