**Alex BENSON, Plaintiff-Appellant,**

v.

**Elmer O. CADY, et al.,**
**Defendants-Appellees.**

**No. 83–2658.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 25, 1984.

Decided April 18, 1985.

Swygert, Senior Circuit Judge, dissented and filed an opinion.

Robert Miller (Law Student), Northwestern University Legal Clinic, Chicago, Ill., for plaintiff-appellant.

Richard J. Boyd, State of Wis., Dept. of Justice, Madison, Wis., for defendants-appellees.

Before WOOD and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant Alex Benson, an inmate at Waupun Correctional Institution [WCI] in Waupun, Wisconsin, appeals from the district court's dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure of his eighth amendment claim that defendants were deliberately indifferent to his physical safety needs and serious medical needs and his pendent state claims arising out of the same facts. Named as defendants were Cady, then Administrator of the Division of Corrections for the State of Wisconsin; Israel, then Warden at WCI; Manthe, Director of Treatment at WCI; Whitmore, Director of the Bureau of Institutional Health Services for the State of Wisconsin; and Mokrohiski, MacLean, Kayute, Bergen, Blevins, and Kliese, physicians at WCI and Dodge Correctional Institution [DCI] at all times relevant to Benson's claim.

I.

The allegations of Benson's amended complaint in support of his eighth amendment claim of deliberate indifference to his safety and serious medical needs are as follows. Sometime between February 22 and February 25, 1981, one of the weights on the barbell exercise equipment that Benson was using at the institution slipped off and struck him in the neck, head, and shoulder area of his body. The lock and screw designed to hold the weight on the equipment were missing. Defendants Cady, Manthe, and Israel failed to have the equipment inspected and repaired. Although Benson filed a request for medical attention on the same day he sustained this injury to his neck, he did not see a physician until two days later.

Benson further alleged that he was assigned to a double cell pursuant to a policy promulgated by defendants Cady and Israel and implemented by defendant Manthe. The conditions in the cell were such that Benson's living space during the day consisted of the area normally occupied by his bed, which was held in its daytime vertical position by two large hooks. One of these hooks was missing. Sometime between March 14 and March 18, 1981, the remaining hook failed, and the bed fell from its vertical position and struck Benson in the neck. Defendants Cady, Israel, and Manthe failed to have the bed inspected and repaired. Again, Benson filed a request for medical attention on the day of the accident but did not receive that attention until two days later. Benson's neck was not X-rayed until one year after this accident. These delays in treatment were alleged to be attributable to the failure of defendants Israel, Cady, and Whitmore to implement an emergency health care system for the efficient and speedy diagnosis and treatment of injuries. Additionally, de-

fendants Cady, Israel, and Manthe instituted a policy of handcuffing inmates during medical examinations. The implementation of this policy in Benson's case interfered with the evaluation and treatment of his injury.

Defendants Whitmore, Mokrohiski, and MacLean allegedly failed to ensure that Benson received all medication prescribed for him by physicians at the University of Wisconsin Hospital in February, 1981 and in May, 1981, and by physicians at the institution in March, 1981 and April, 1981. These defendants further failed to ensure that Benson received all traction prescribed for him in March, August, and November of 1981 and in February of 1982. Defendants Whitmore, Kayute, Bergen, and Blevins did not ensure that Benson received all medication prescribed for him by University of Wisconsin Hospital physicians in November, 1981, and did not ensure that he received the cervical collar prescribed in February, 1981. Defendant Kliese prescribed a psychiatric drug rather than the muscle relaxant and pain reliever Benson needed.

Additionally, Benson alleged that defendant Israel failed to authorize visits to Waupun Memorial Hospital for prescribed physical therapy on ten of the twenty days in March and April of 1981 for which it was scheduled. And, although Israel authorized Benson's visits to Waupun Memorial Hospital for physical therapy on ten days in March and April of 1981, he refused to permit Benson to stay for both scheduled therapy sessions. Finally, on May 6, 1982, Benson was returned to a double cell pursuant to the policy of defendants Cady and Israel, a move that further aggravated his injuries.

As a result of the acts and omissions of defendants, Benson allegedly sustained injuries to his neck, right shoulder and right arm, some of which are permanent and will require further treatment. These injuries allegedly have restricted his ability to function in his trade as a tailor and precluded his enjoyment of certain enumerated activities.

Benson's second claim is that defendants Cady and Israel have promulgated a racially discriminatory double celling policy. This discrimination claim, the claim against Israel for refusing to authorize Benson's visits to a local hospital for prescribed physical therapy, and a pendent state claim based upon this conduct by Israel survived the motion to dismiss. The eighth amendment claims against all other defendants and the remaining pendent state claims were dismissed, erroneously Benson argues.

## II.

■ We pause for a moment to articulate our standard of review and some general principles applicable to eighth amendment tort actions. Benson's amended complaint, which was drafted by an attorney, is not entitled to the protection afforded *pro se* complaints under *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Rather, the sufficiency of the amended complaint is to be appraised under the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 42, 45–46, 78 S.Ct. 99, 100, 101–102, 2 L.Ed.2d 80 (1957):

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Although the Federal Rules of Civil Procedure do not require a plaintiff "to set out in detail the facts upon which he bases his claim," *id.* at 47, 78 S.Ct. at 102, he must "set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery." *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D.Haw.1953) (quoted in *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)). If the factual allegations narrated in the complaint are insufficient to outline an eighth amendment violation, attaching to these facts the bare legal conclusion that defendants were deliberately indifferent will not save the complaint. *Id.*

■ A section 1983 action is a tort damage action even though the duty the defendant is alleged to have breached is created by the Constitution or federal law. *Lossman v. Pekarske,* 707 F.2d 288, 290 (7th Cir.1983). The elements of a cause of action under section 1983 are (1) a constitutionally recognized duty on the part of the state to conform to a certain standard of conduct for the protection of others against an unreasonable risk of harm; (2) a failure to conform to that standard; (3) a causal connection between the state's failure and the plaintiff's injury; and (4) actual damage. *Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir.1983) (duty); *Parrett v. City of Connersville, Ind.,* 737 F.2d 690, 695 (7th Cir.1984) (causal connection); *Lossman,* 707 F.2d at 290–91 (actual damage).

■ It is axiomatic that a plaintiff can prove no deprivation of his constitutional rights under section 1983 unless the state has a constitutionally recognized duty to protect the plaintiff. *Jackson,* 738 F.2d at 1446. We have stated that, as a general rule, the Constitution, which is a "charter of negative liberties," does not require the state to provide even elementary protective services to its citizens. *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982). *See also Beard v. O'Neal,* 728 F.2d 894, 899 (7th Cir.1984). But if the state has created a custodial or other special relationship with a particular class of individuals, courts have recognized that the state may have a constitutionally recognized "affirmative duty" to provide certain "elementary protective services." *Jackson,* 738 F.2d at 1446–47. Prison inmates represent one such class. In *Estelle v. Gamble,* 429 U.S. 97, 104–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976), the Supreme Court recognized a constitutional duty on the part of the state not to be deliberately indifferent to the medical needs of its prison inmates. Although this eighth amendment duty has been phrased negatively by the Supreme Court, we have stated that the state has an affirmative obligation "to provide persons in its custody with a medical care system that meets minimal standards of adequa-

cy." *Wellman v. Faulkner,* 715 F.2d 269, 271 (7th Cir.1983).

■ The eighth amendment duty articulated in *Estelle* has not been limited to elementary services necessary to protect inmates' health. The state also has a duty to protect inmates from unwarranted physical injury. Deliberate indifference on the part of prison officials to violent attacks and sexual assaults by other inmates is proscribed by the eighth amendment. *Walsh v. Brewer,* 733 F.2d 473, 476 (7th Cir.1984); *Ramos v. Lamm,* 639 F.2d 559, 572 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Little v. Walker,* 552 F.2d 193, 197 (7th Cir.1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978).

■ It has long been established, however, that negligence, evidenced by, *inter alia,* simple inattention or inadvertence, may not form the basis for an eighth amendment claim. *See, e.g., Estate of Davis v. Johnson,* 745 F.2d 1066, 1070 (7th Cir.1984); *United States ex rel. Miller v. Twomey,* 479 F.2d 701, 719–21 (7th Cir. 1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974). A plaintiff must prove deliberate indifference, evidenced by either actual intent or reckless disregard. *Little,* 552 F.2d at 197. Although the term "actual intent" is self-explanatory, reckless disregard is not. A defendant acts recklessly when he disregards a substantial risk of danger that either is known to him or would be apparent to a reasonable person in his position. Recklessness is characterized by highly unreasonable conduct or a gross departure from ordinary care in a situation where a high degree of danger is apparent. PROSSER, LAW OF TORTS § 34, at 185 (4th ed. 1971). The standard is an objective one. *Little,* 552 F.2d at 197. Although subjective unawareness of the risk is no defense, the risk must be foreseeable. Indeed, risk is defined as a recognizable danger of injury. PROSSER, § 31, at 145. The risk also must be substantial.

Accordingly, we have held, in the context of an alleged failure by correctional offi-

cials to protect a prisoner from the risk of attack, that the plaintiff must prove that the officials knew or had reason to know there was a "strong likelihood" that violence would occur. *Estate of Davis*, 745 F.2d at 1071. Where assaults occur so frequently as to be "pervasive," a substantial risk of violence is apparent. *Walsh*, 733 F.2d at 476. Conversely, random acts of violence provide no basis for a finding of a substantial, foreseeable risk of harm.

The principles we have set forth provide the basis for determining whether a plaintiff has suffered a deprivation of his eighth amendment right to be free from cruel and unusual punishment. Of course, if no deprivation has occurred, the issues of causation and actual damage need not be addressed.

The theory behind the "bed and barbell" portion of Benson's eighth amendment claim is that he has a right to be protected from physical injury caused by dangerous and defective physical objects in the prison environment. Assuming *arguendo* that the state's deliberate indifference to unreasonable risks of harm posed by an inmate's physical environment violates the eighth amendment, Benson's complaint is insufficient to state such a claim.

■ Benson contends that he adequately alleged that defendants were deliberately indifferent to his physical safety needs. We agree with the district court that the allegation that defendants failed to inspect and maintain the beds and exercise equipment is merely an allegation that defendants did not exercise due care. In other words, they were negligent. A mere failure to inspect and repair periodically defective items in the prison environment does not evidence deliberate indifference. Conversely, the knowing maintenance of a dangerous condition or the disregard of a substantial risk of danger that would be apparent to a reasonable person evidences recklessness. Benson contends that we may infer defendants' actual or constructive knowledge of the dangerous conditions of the bed and barbells from the allegations that they "negligently permitted" one of

the bed's hooks to remain missing for seven weeks and "permitted" the defective barbells to remain unrepaired and to be used by inmates.

It is difficult to reconcile the allegation that defendants failed to inspect these items with the contention that defendants had actual knowledge of their dangerously defective conditions. Benson has not alleged that he alerted defendants to the danger or that defendants, high-ranking prison officials, observed the dangerous conditions of these items. The question remains whether Benson has adequately alleged that defendants had reason to know of the danger, *i.e.*, whether a high degree of danger would have been apparent to reasonable persons in defendants' positions. Although Benson contends on appeal that the defective conditions of these items were patent, he did not so allege in his complaint. Nor did he allege a pattern of injuries from similar defective items that would permit us to find that the risk of harm was foreseeable. In sum, we conclude that Benson, who has failed to allege that defendants knew or had reason to know of the risk posed by the defective bed and barbells, has failed to state a claim of deliberate indifference to his physical safety.

■ We turn to Benson's eighth amendment claim that defendants were deliberately indifferent to his serious medical needs. To state a cognizable claim of cruel and unusual punishment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Id.* at 104–05, 97 S.Ct. at 291. "Inadvertent failures to provide adequate medical care" or "negligence in diagnosing or treating a medical condition" do not rise to the level of an eighth amendment violation. *Id.* at 105, 97 S.Ct. at 291.

Benson alleges that, despite his immediate request for medical attention, he did not see a doctor for at least two days after each accident. Benson does not allege that the defendants named with respect to this claim—Israel, Manthe, and Whitmore—intentionally delayed his access to or refused his request for treatment. Rather, he alleges that they failed to implement an adequate system for the speedy diagnosis and treatment of injuries. Deliberate indifference "can be demonstrated by 'proving there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care.'" *Wellman,* 715 F.2d at 272 (quoting *Ramos,* 639 F.2d at 575). Benson's conclusory allegation fails to state such a claim. He has alleged no specific deficiencies in the health care system from which deliberate indifference can be inferred.[1]

Nor has Benson stated a claim against defendant Whitmore and defendant physicians Mokrohiski, MacLean, Kayute, Bergen, and Blevins for intentionally interfering with prescribed treatment. In essence, he alleges that defendants failed in their duties to ensure that he received prescribed medications and a cervical collar. There is no allegation that defendants refused to provide prescribed treatment or in any other way deliberately interfered with prescribed treatment.[2] Benson has stated a claim for mere negligence, which is not actionable under the eighth amendment.

Benson also alleges that defendant Kliese prescribed a psychiatric drug for him instead of a pain reliever-muscle relaxant, and that he suffered adverse side effects from the drug. Although this court has found that an allegation that the plain-

tiff inmate was administered penicillin despite his known allergy to that drug stated an eighth amendment claim, *Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.), *cert. denied sub nom. Thomas v. Cannon,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974), Benson's allegation does not rise to a constitutional level. Benson does not allege that Kliese intentionally prescribed the incorrect medication or that he did so with the knowledge that it would harm Benson. At best, he has stated a claim for medical malpractice. Negligence in treating a medical condition is not actionable under the eighth amendment. *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291.

Finally, Benson alleges that his neck injury was aggravated when he was returned to a cramped double cell pursuant to a policy instituted by defendants Cady and Israel and implemented by defendant Manthe. In his brief, Benson cites a number of cases in which acts or omissions by defendants that aggravated existing injuries or illnesses were held to be actionable under the eighth amendment. *See, e.g., Martinez v. Mancusi,* 443 F.2d 921, 924 (2d Cir.1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971) (guards forced inmate to walk from hospital after leg surgery in defiance of physician's contrary instructions); *Campbell v. Beto,* 460 F.2d 765, 766–67 (5th Cir.1972) (prison officials refused to provide inmate with medication for known heart condition and ordered that he do hard labor, resulting in heart attack). In these cases, the plaintiffs alleged that defendants were aware of the seriousness of plaintiffs' medical conditions and were guilty of willful and malicious acts or omissions designed to aggravate these conditions. Even if we assume that defendants Cady, Israel, and Manthe were

---

1. Benson also has alleged that defendants Cady, Israel, and Manthe instituted a policy of handcuffing inmates during medical examinations and that the implementation of this policy in his case interfered with the evaluation and treatment of his injury. Although implementation of this policy is clearly deliberate action, we do not believe that in and of itself it represents indifference to Benson's serious medical needs. As the district court noted, "[r]elatively minor

impediments to medical examination do not create a constitutional claim."

2. The district court found that Benson had stated an eighth amendment claim against Israel for Israel's refusal to allow him to visit a hospital for all prescribed physical therapy. This conclusion is not challenged on appeal.

aware of his condition, Benson has not alleged that they willfully and maliciously returned him to a double cell with the knowledge that such confinement would aggravate his injury. Benson contends that even if defendants had not specifically intended to aggravate his injuries, they nevertheless acted in reckless disregard of his well-being. As we previously discussed, a defendant acts recklessly when he disregards a substantial risk of danger that either is known to him or would be apparent to a reasonable person in his position. Benson's complaint is devoid of allegations from which such reckless disregard may be inferred.

### III.

Benson devotes a portion of his brief on appeal to a claim that defendants retaliated against him for exercising his constitutionally guaranteed right to seek judicial relief. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). The sole allegation in the amended complaint relevant to this claim was made in the context of Benson's eighth amendment claim that, in returning him to a double cell after his neck injury, defendants aggravated that injury. This action by defendants was alleged to evidence deliberate indifference to his serious medical needs and to be "in retaliation for his lawsuit." Noting that it did not appear that Benson wished to pursue a retaliation claim because the allegation was included in the eighth amendment claim, the district court stated that if Benson did want to do so, he should amend his complaint or file a separate lawsuit. Benson apparently has chosen to stand on the allegation of the first amended complaint. We agree with the district court that the alleged retaliation should have been the subject of a separate claim that adequately set forth the factual allegations in its support.

Recognizing that the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, *cf. Buise v.*

*Hudkins*, 584 F.2d 223 (7th Cir.1978), courts have found sufficient complaints that allege a chronology of events from which retaliation may be inferred. *See, e.g., McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.1979). Conversely, alleging merely the ultimate fact of retaliation is insufficient. The chronology of events that we have pieced together from the complaint is as follows: Benson was returned to a double cell at WCI following short stays in the health unit after the barbell and bed accidents in February and March of 1981; he remained in a double cell at WCI until his transfer to DCI, a medium security institution, on May 26, 1981; on April 30, 1982, while he was incarcerated at DCI, Benson contacted his court-appointed attorney; and six days later, on May 6, 1982, Benson was transferred back to WCI and placed in a double cell, allegedly in retaliation for this lawsuit. We believe this chronology of events is insufficient to support an inference of retaliation. Benson originally instituted this lawsuit on December 7, 1981, five months before the alleged retaliation took place. The lengthy period of time between the filing of the lawsuit and the transfer greatly weakens any inference that the transfer was in retaliation for the lawsuit. Additionally, Benson's complaint contains no allegation that he was housed in a single cell at DCI and that therefore his transfer to a double cell at WCI represented a change for the worse in conditions, an allegation from which we might infer that an impermissible motive underlay the transfer decision. Although Benson's complaint might be deemed sufficient under the standard of review for *pro se* complaints, *id.* at 18, applying the standard of review for complaints drafted by attorneys, we conclude that it fails to state a claim of retaliation for the exercise of a constitutionally protected right. This is not at all surprising, since the allegation of retaliation appears to have been appended to the eighth amendment claim as an afterthought. We suggest that Benson take the district court's advice and make this claim, should he desire to pursue it, the subject of a separate lawsuit.

## IV.

Finally, Benson contends that the district court erred in dismissing his pendent state claims. He contends that all state claims derive from the same nucleus of operative fact as the federal claims found to be substantial. Two of Benson's federal claims survived defendants' motion to dismiss: (1) his eighth amendment claim that defendant Israel refused to allow him to receive all scheduled physical therapy; and (2) his equal protection claim that defendants Cady and Israel have implemented a double celling policy that discriminates on the basis of race. The amended complaint contained four pendent state claims: (1) that the negligence of defendants Cady, Israel, and Manthe in failing "to implement and supervise the inspection and repair" of the barbells was the proximate cause of his neck injury from the barbell accident; (2) that the negligence of defendants Cady, Israel, and Manthe in failing "to implement and supervise the inspection and repair" of the bed was the proximate cause of the aggravation of his neck injury from the falling bed accident; (3) that defendant Whitmore, in failing "to implement and supervise" an efficient medical request system, negligently caused a two-day delay in his receipt of medical attention, neglect that violated Wis.Stat. § 940.29;[3] and (4) that defendants Cady, Israel, and Manthe, in failing "to implement and supervise" an efficient medical request system, negligently caused a two-day delay in his receipt of medical attention, neglect that violated Wis.Stat. § 940.29. Benson further asserted that all alleged acts and omissions by defendants described in connection with his eighth amendment claim, including Israel's refusal to permit him to visit the local hospital for all scheduled physical therapy sessions, also violated Wis.Stat. § 53.385, which provides that the standards for the delivery of health care in Wisconsin prisons shall conform to the standards adopted by the American Medical Association.

A federal court may, in its discretion, entertain state law claims when a plaintiff's complaint presents a substantial federal question and the federal and state claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The district court's assessment was that the only federal and state claims that are so factually related are the eighth amendment claim that Israel intentionally interfered with prescribed therapy by refusing to permit Benson to attend all scheduled physical therapy sessions and his state claim, apparently based upon § 53.385, that Israel failed to ensure that he received care conforming with state standards.[4]

Benson contends that, under either the evidentiary or the transactional approach to determining whether a state and federal claim derive from a common nucleus of operative fact, all his pendent state claims satisfy the *Gibbs* requirement. We disagree. Benson's pendent state claims, with the exception of the one he was permitted to pursue, are merely sequentially related to his federal claim against Israel. Israel's interference with prescribed physical therapy is a claim that is separable both factually and logically from all other acts and omissions alleged in the complaint. Contrary to Benson's assertion, in order to establish his federal claim against Israel, he will not be required to present evidence on the alleged cause of his injury (*i.e.*, negligent failure to inspect and repair de-

---

**3.** Wis.Stat. § 940.29 provides that the abuse or neglect of a resident of, *inter alia,* a penal or correctional institution is a Class E felony. Apparently, Benson seeks to rely upon the tort doctrine that the violation of the standard of conduct prescribed in a statute constitutes negligence per se. *See* PROSSER, § 36, at 190–204.

**4.** Contrary to Benson's representation in his brief, the district court did not permit him to pursue state claims against Israel for the two-day delays in the receipt of medical care following each accident, allegedly caused by Israel's failure to implement and supervise efficiently the inmate medical request system, for the handcuffing policy, or for the aggravation of his injuries allegedly caused by the double celling policy.

fective barbells and bed), or on other alleged denials of adequate medical treatment. He need only establish that he had a serious medical need to which Israel was deliberately indifferent. That is, that Israel intentionally interfered with prescribed treatment by refusing to permit him to visit the local hospital for all scheduled therapy sessions.[5]

Finally, Benson contends the district court had pendent party jurisdiction and abused its discretion in refusing to exercise that jurisdiction. This court recently noted that, "where the main claim is a federal-question claim, there is considerable support for allowing pendent party jurisdiction to be exercised over a related state-law claim against a different party." *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 187 (7th Cir.1984) (citations omitted).

A valid pendent claim, however, "must be based on the same facts as the main claim." *Id.* As we previously noted, none of Benson's state claims against the purported pendent parties is based upon the same facts as his eighth amendment claim against Israel, or his equal protection claim against Israel and Cady. We find no abuse of discretion in the district court's refusal to entertain all but one of Benson's state claims.

AFFIRMED.

SWYGERT, Senior Circuit Judge, dissenting.

Benson alleges a number of instances in which medical treatment for his head and neck injuries was either denied or delayed: (1) he did not see a physician until at least two days after each of his two accidents, which occurred in February and March of 1981, Amended Complaint at ¶ 15(d); (2) he

did not receive an X-ray diagnosis for his neck injury until more than a year after the accident, *id.;* (3) he did not receive all of the medicine prescribed for him between February and May 1981, *id.* at ¶ 15(f), (h); (4) he did not receive a cervical collar prescribed for him on February 2, 1982, *id.* at ¶ 15(j); (5) he did not receive all of the traction prescribed for his neck injury in March, August, and November 1981, *id.* at ¶ 15(i); (6) his treatment was hindered by the requirement that he be handcuffed during medical examinations, *id.* at ¶ 15(*l*); (7) after sustaining his injuries, he remained in a cramped, double-cell, which aggravated his neck injury, *id.* at ¶ 15(n); (8) instead of the pain reliever and muscle relaxant he needed, Benson was prescribed a psychiatric drug that caused him to suffer harmful side effects, *id.* at ¶ 15(g); and (9) he was denied permission to visit an outside hospital for prescribed therapy, *id.* at ¶ 15(k). I would hold that these allegations, read as a whole, state a claim of reckless disregard on the part of all defendants for Benson's serious medical needs, thereby satisfying the "deliberate indifference" standard of *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *See Little v. Walker*, 552 F.2d 193, 197 n. 8 (7th Cir. 1977), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978).

I am willing to accept the majority's conclusion that, except for the ninth allegation enumerated above, each of the allegations individually state only a negligence or malpractice claim, which is not a sufficient breach of duty to violate the eighth amendment. *See Gamble*, 429 U.S. at 105–06, 97 S.Ct. at 291–92. And I am willing to accept its conclusion that the allegations read as a whole do not state an eighth amendment

---

**5.** Benson also contends that his state claim against Cady and Israel "for injuries caused by double celling" derives from the same nucleus of operative fact as the substantial federal claim of racially discriminatory double celling. With respect to the federal claim, Benson's factual allegations were that a significantly higher percentage of black inmates than white inmates were assigned to double cells and that he, a black, was assigned to a double cell. The factual allegations in support of Benson's state claim

bear no resemblance to those supporting his equal protection claim. Although Benson explained that because he was assigned to a double cell his living space during the day consisted of a position under the vertically-supported bed, his state claim was that defendants' negligent failure to inspect and repair his defective bed was the proximate cause of his injury or, more specifically, the aggravation of the existing injury. We fail to see how these claims derive from a common nucleus of operative fact.

claim of "deliberate indifference" in the sense that they do not show "such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir.1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)). Nevertheless, I must dissent because the majority ignores another alternative means for establishing deliberate indifference that was set forth in *Wellman*.

In *Wellman* this court held that deliberate indifference "can be evidenced by 're-peated examples of negligent acts which disclose a pattern of conduct by the prison medical staff.'" *Wellman*, 715 F.2d at 272 (quoting *Ramos*, 639 F.2d at 575). The nine allegations enumerated above establish such a pattern. The only remaining issue, then, is whether all the defendants should be included in this "pattern of conduct." Cady, Israel, Manthe, and Whitmore, as supervisory personnel with an obligation to ensure the physical well-being of inmates, should be held responsible for such a systemic breakdown in healthcare. Whether the six defendant physicians should also be held responsible is less clear. Yet, given Benson's allegations that these individual doctors had a supervisory duty to ensure that their medical orders were carried out, Amended Complaint at ¶¶ 7–12, and that all the defendants worked "in concert," *id.* at ¶ 17, these doctors should be deemed responsible, at least at this stage of the proceedings.

Quite possibly, defendants will eventually establish that there was no pattern of negligence or that various defendants were not sufficiently high in the supervisory hierarchy to be deemed responsible for systemic deficiencies. But to reach that conclusion now, before any discovery has been taken, would be inappropriate. Indeed, by imposing such a heavy burden on the plaintiff at the pleading stage, the majority ignores the most fundamental policies of the Federal Rules. I would reverse the district court's order dismissing seven defendants

from the case and would remand for further proceedings.