**Alan RANDALL, Plaintiff,**

v.

**James R. THOMPSON, Michael D. Lane, Gayle Franzen, Richard DeRobertis, and Michael P. O'Leary, Defendants.**

No. 83 C 233.

United States District Court,
N.D. Illinois, E.D.

April 18, 1986.

146

Alan Randall, Menard, Ill., for plaintiff.

Norman B. Berger, Ill. Atty. Gen. Office, Stephen G. Kehoe, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Alan Randall brings this pro se civil rights action pursuant to 42 U.S.C. § 1983 seeking damages against Governor James Thompson, the current and former Director of the Illinois Department of Corrections, and the present and former warden at the Stateville Correctional Center. On October 2, 1984, Judge Charles P. Kocoras dismissed the complaint as to defendant Thompson. The remaining four defendants are now before the Court on a motion for summary judgment.

On January 26, 1983, unknown assailants attacked Randall in the E–House tunnel at Stateville. They beat him with iron pipes and stabbed him with sharpened screwdrivers, causing serious eye damage and permanent physical injury. Randall's complaint alleges an Eighth Amendment violation and seeks to hold defendants accountable for his assault due to their authorization of a 1979 prison renovation that closed off all escape exits from the tunnel. Randall contends the design modifications in the tunnel where the attack took place and lack of sufficient personnel to secure the area created an inherent risk of harm to inmates who passed through the tunnel. He alleges several inmates have been victims of attack in the tunnel.

Relying on portions of Randall's deposition and the investigatory facts set out in reports prepared shortly after the assault, defendants maintain the assault on Randall was isolated and not attributable to any inherently dangerous condition of the E–House tunnel. They contend that to hold them liable as supervisory officials, Randall must establish their personal involvement in the attack. They assert that the single attack alleged in the complaint is insufficient to state a claim against them for supervisory malfeasance.

In response to the summary judgment motion, Randall has submitted his own affidavit and the affidavits of two fellow prisoners, Thomas Jefferson and James Terry. Jefferson's affidavit avers that since 1948 he has served thirty years at Stateville on four separate convictions. He states that from 1943 until 1978 the tunnels running from the cellhouses to the main tunnel contained escape exits. He asserts in that all but one of the forty inmate assaults he

observed between 1943 and 1974, the inmate being pursued in the tunnels was able to escape through the exits. According to Jefferson, the escape exits led to areas that were under the surveillance of guards in gun towers who could protect an inmate under attack by other prisoners. Jefferson states that when he returned to Stateville in 1979, he discovered that all the emergency escape exits in the tunnels were closed and replaced with remote control gates. In March 1981, Jefferson witnessed the murder of another inmate in the C–Cellhouse tunnel. Jefferson states that the guard stationed at the door between the Cellhouse and the tunnel refused to open the door to allow the inmate access to safety.

Terry's affidavit states that a gang fight broke out in the E–Cellhouse tunnel in July 1984. He states he ran to the cellhouse door and knocked, but the officer at the door would not let him enter. He then had to fight his way back to the other end of the tunnel to escape. He does not indicate if he suffered any injuries in the incident.

In his affidavit, Randall reiterates that between 1971 and 1979 the escape exits and the two guard towers that protected inmates who used the tunnel were closed. He asserts he has witnessed "many prisoners stabbed and bludgeoned who would easily have escaped their attackers" had the safety exits in the E–Cellhouse tunnel still been available for use.

To prevail on a motion for summary judgment, the moving party has the burden of establishing that there is no genuine issue of material fact. *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir. 1984). Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Hermes v. Hein*, 742 F.2d 350, 353 (7th Cir.1984). The existence of a factual dispute, however, only precludes summary judgment if the disputed fact is outcome-determinative. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). " 'A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties'

differing versions of the truth.' " *Korf*, 726 F.2d at 1226, *quoting Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir.1982). With these precepts in mind, the Court turns to the arguments defendants advance in support of their motion.

Defendants maintain Randall's complaint, read in the light of his deposition testimony, is a classic isolated assault case where, despite the best efforts of Stateville's administration, Randall and another inmate were injured at the hands of other inmates. Defendants point to deposition testimony wherein Randall contradicts his assertion that no correctional officers secured the area where the attack took place. Citing the presence of security staff in the vicinity of the attack and the lack of reason to anticipate any assault on Randall, defendants contend the undisputed facts fail to show that they knowingly created a condition inherently hazardous to the safety of the inmates at Stateville.

■ Supervisory prison officials may be held liable under the Eighth Amendment where they deliberately maintain prison conditions in such a manner as to create an inherent risk of harm to an inmate committed to their custody. *Walsh v. Brewer*, 733 F.2d 473, 476 (7th Cir.1984). Nonetheless, as the Supreme Court recently recognized in *Whitley v. Albers*, —— U.S. ——, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251, 54 U.S. L.W. 4236, 4238 (1986), "[t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Thus, as the Seventh Circuit noted in *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985), mere negligence or inadvertence is not sufficient to sustain a claim for relief under the Eighth Amendment. To gain relief for an alleged Eighth Amendment claim, plaintiff must prove that officials knew or had reason to know there was a strong likelihood that violence would occur. *Id.* at 340.

■ Randall cites two conditions as factors in his attack—the absence of any

prison officials in the tunnel where the attack took place and the closing of safety exits in the tunnel. Randall's allegation that defendants' failure to ensure the presence of guards created an unconstitutional risk of harm to inmates passing through the tunnel is not, however, supported by the record. From Randall's deposition it appears that the tunnel was at least partially monitored by a camera. Moreover, Randall further stated that correctional officers routinely patrolled the tunnel. Furthermore, although Randall asserts no officer was in the tunnel at the time of the attack, documentary evidence submitted by defendants shows that a guard just outside the tunnel responded immediately to Randall's shouts and intervened to disperse his assailants. Thus, even when read in the light most favorable to Randall, the record does not reveal such a complete absence of security as to evidence more than ordinary lack of due care on the part of defendants.

But the fact that correctional officers routinely monitored the tunnel does not defeat Randall's claim that modification of the design of the tunnel to eliminate escape exits created an inherently dangerous condition. Defendants do not directly address Randall's design modification theory of liability. Randall maintains that in altering the tunnel, defendants changed a relatively safe area of the prison into a "death trap ... leaving both prisoners and prison officials 100% vulnerable for physical assaults." He alleges "[i]n the past, a hot-pursued, unarmed victim had merely to reach one of the many escape exits, and either escape to safety or scream desperately for assistance from one of the numerous 24 hour manned gun towers." To rebut defendants' characterization of Randall's claim as a single, isolated assault, Randall submits affidavits attesting to other assaults in Stateville tunnels following the 1979 closing of the exits leading out of the tunnels. These affidavits detail only two concrete incidents involving attacks upon inmates in Stateville tunnels. One attack, which took place two years before Randall's stabbing, did not occur in the same tunnel. The other attack took place

nearly eighteen months after the assault on Randall. While it may be questionable whether the two widely spaced attacks Randall specifically relies on to support his claim are enough to create an inference that defendants deliberately ignored a known risk of harm, the onus is on defendants to sufficiently respond to the theory of liability underlying Randall's complaint and to demonstrate the absence of any genuine issue of material fact. Randall, whose pro se status may have limited his ability to engage in the discovery necessary to prove his claims, also makes general allegations of other attacks. In the absence of any evidence to the contrary, the Court must conclude that a factual dispute exists as to whether attacks in the Stateville tunnels were so frequent as to put defendants on notice of the dangers caused by changes in the design of the tunnel system. Deliberate indifference to a pervasive risk of violence violates the Eighth Amendment. *See Benson*, 761 F.2d at 340.

Accordingly, for the reasons stated, the Court denies defendants' motion for summary judgment. The Court shall appoint counsel from the trial bar to represent Randall.