932 F.2d 971
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Tiny Tim GILBERT, Plaintiff-Appellant,
v.
Ralph FRAZIER, M.D., Larry W. Mizell, Melvin L. Bradford,
and David M. Baker, Defendants-Appellees.
 No. 89-1180.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 27, 1991.
Decided May 16, 1991.
 
 Before POSNER, COFFEY, KANNE, Circuit Judge.
 
 ORDER
 
 1
 Plaintiff-Appellant, Tiny Tim Gilbert, appeals from the district court's entry of summary judgment in favor of the defendants on his Sec. 1983 claim. We affirm in part and reverse in part.
 
 I.
 
 2
 On May 20, 1986, Gilbert was released from the hospital, six days after he had surgery to remove hemorrhoids. He was to be transferred back to the Shawnee Correctional Center. Defendants, Melvin Bradford and David Baker, were the officers sent to transport Gilbert back to prison. Gilbert requested that he be permitted to ride back to prison in an ambulance, alleging that post-operative pain prohibited his riding in the station wagon. Lieutenant Bradford called the prison to see whether an ambulance was required. Dr. Frazier, the physician at the Shawnee Health Care Unit, told Bradford that Gilbert could be transported by car. Gilbert alleges that due to the nature of the surgery and the fact that he was catheterized at the time, the ride back to the prison was extremely painful.
 
 
 3
 Upon his arrival at the prison, Gilbert requested that he be transported into the Health Care Unit in a wheelchair, because he was too weak to walk and walking caused extreme pain. Again either Bradford or Baker checked with Dr. Frazier about the request and Frazier denied it. When he learned that Dr. Frazier had denied the wheelchair, Gilbert called the doctor a "bastard" and threatened to hit him the next time he saw him. That statement and threat were the subject of a disciplinary action which will be discussed in more detail later in this order.
 
 
 4
 On May 21, 1986, Gilbert was taken from the prison to a second hospital in Paducah, Kentucky to be treated by a urologist. On May 23, 1986, Gilbert was transferred back to prison. Upon his arrival, Dr. Frazier released Gilbert from the Health Care Unit, and he was placed in segregation, because of the charges of intimidation and insolence arising out of his statements threatening violence against Dr. Frazier.
 
 
 5
 On July 10, 1986, Gilbert filed his Complaint in the district court, alleging an eighth amendment violation and a due process violation. The parties consented to final entry of judgment by a United States Magistrate pursuant to 28 U.S.C. Sec. 636(c). The defendants filed a Motion for Summary Judgment. A hearing was held on the Motion and Magistrate Cohn, thereafter, entered judgment in favor of the defendants on all of the plaintiff's claims.
 
 II.
 
 6
 On appeal, Gilbert raises two issues. Initially, he maintains that he was denied adequate medical care in violation of the eighth amendment. In addition, he alleges that his due process rights were violated when he was placed in segregation without a hearing.
 
 
 7
 We first address the eighth amendment claim. Gilbert asserts cruel and unusual punishment from the denial of his request to be transported from the hospital to the prison in an ambulance and the denial of his request to be taken from the car to the Health Care Unit in a wheelchair. His allegations with respect to these two actions are directed at Dr. Frazier, Lieutenant Bradford, and Officer Baker. In each instance after Gilbert made the request, either Bradford or Baker asked Dr. Frazier whether either the request should be granted. Each time, Dr. Frazier said that neither was required, based upon his consultation with Gilbert's surgeon who indicated that the surgery and recovery had been unremarkable and upon his own medical experience that six days after a hemorrhoidectomy, absent complications, the patient was capable of walking and of being transported without an ambulance. Gilbert maintains that in denying the requests Frazier, Bradford, and Baker acted with deliberate indifference to a serious medical need.
 
 
 8
 In support of his eighth amendment claim, Gilbert also asserts that while he was in segregation, he was denied proper medical care, specifically that he did not receive his medication and was not permitted to take the daily sitz bath treatments allegedly prescribed by his surgeon. Gilbert maintains that Dr. Frazier and Warden Mizell were responsible for those omissions because of their supervisory positions.
 
 
 9
 In order to prevail on his eighth amendment claim for cruel and unusual punishment, the plaintiff must allege " 'acts and omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.' " Benson v. Cady, 761 F.2d 335, 340 (7th Cir.1985) (quoting Estelle v. Gamble, 429 U.S. 97, 106). "[T]he infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense. Gross negligence is not enough. Unlike criminal recklessness it does not import danger so great that knowledge of the danger can be inferred...." Duckworth v. Franzen, 780 F.2d 645, 652-53 (7th Cir.1985).
 
 
 10
 In this case, none of the allegations rise to the level of a constitutional violation. With respect to the denial of the ambulance and the wheelchair, it is important to note that neither Gilbert's surgeon nor Dr. Frazier thought that an ambulance was necessary to transport a patient six days after surgery to remove hemorrhoids. In addition, Dr. Frazier stated in his affidavit that in twenty-six years of practice he had never known of a patient that had to be transported by an ambulance six days after such surgery in the absence of complications. In light of the evidence concerning the need for an ambulance, at best Dr. Frazier's decision to deny the ambulance can be characterized only as negligence; therefore, it does not rise to the level of an eighth amendment violation. Benson v. Cady, 761 F.2d 335, 340 (7th Cir.1985) (citing Estelle v. Gamble, 429 U.S. 97, 105 (1976)). Similarly, his decision to deny the wheelchair based upon his medical judgment that walking would not result in injury to Gilbert was likewise at most negligence; therefore, it is insufficient to support an eighth amendment claim.
 
 
 11
 With respect to the claims against Bradford and Baker for the denial of the ambulance and the wheelchair, Gilbert's argument is even weaker. After each request, either Bradford or Baker called Dr. Frazier to see whether the request was medically necessary. The reliance of the officers on the doctor's medical judgment that the denial of the ambulance and the wheelchair would not cause serious injury to Gilbert can scarcely be characterized as negligence. It certainly cannot be characterized as reckless conduct undertaken in the face of a known and serious risk. Gilbert's eighth amendment claim as to Bradford and Baker is without merit.
 
 
 12
 Gilbert's allegations of eighth amendment violations resulting from his placement in segregation must also fail. He alleges that he did not receive his medication and the sitz bath treatment, and that Dr. Frazier and Warden Mizell are responsible for the omissions because of their supervisory positions. He fails, however, to assert their personal involvement in the alleged withholding of medication or treatment. " 'Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a Sec. 1983 action unless he caused or participated in an alleged constitutional deprivation.' " Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir.1986) (quoting Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983)) (emphasis in original). The failure to allege and establish personal involvement on the part of Frazier or Mizell in the alleged omissions is fatal to the claim associated with them.
 
 
 13
 Finally, Gilbert alleges that his placement in segregation without a hearing violated his due process rights. The first question to be resolved in the analysis of Gilbert's due process claim is whether he had a liberty interest protected by the fourteenth amendment in having a hearing on the offense charged and a finding of guilt prior to being placed in segregation. Neither the district court nor the state addressed the issue of whether Gilbert had a protectable liberty interest sufficient to invoke the protection of the due process clause in this case. Rather, both maintain that the due process requirements for prison disciplinary proceedings established in Wolff v. McDonnell, 418 U.S. 539, 563-72 (1974), were satisfied in this case.
 
 
 14
 "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it. Protected liberty interests 'may arise from two sources--the Due Process Clause itself and the laws of the States.' " Kentucky Dep't of Corrections v. Thompson, 109 S.Ct. 1904, 1908 (1989) (quoting Hewitt v. Helms, 459 U.S. 460, 466 (1983)). A state regulation will create a constitutionally protected liberty interest only if it employs " 'explicitly mandatory language,' in connection with the establishment of 'specific substantive predicates' to limit discretion...." Id. at 1910 (quoting Hewitt, 459 U.S. at 471-72). That is, a protectable liberty interest is created where the state "establish[es] substantive predicates to govern official decision-making, and further, mandate[s] the outcome to be reached upon a finding that the relevant criteria have been met." Id. at 1909; See also Colon v. Schneider, 899 F.2d 660 (7th Cir.1990).
 
 
 15
 At issue in this case are the regulations dealing with the discipline of adult prisoners in Illinois and whether they create a protectable liberty interest which was infringed by the placement of Gilbert in segregation without a hearing. If such an interest exists, its apparent source would be the Administrative Regulations of the Department of Corrections.[1]
 
 
 16
 The regulations relevant to the determination of whether a liberty interest exists in this case are found at 20 Ill.Admin. Code Secs. 504.10-504.150. The disciplinary regulations include a table of offenses that are classified according to severity. In this case, Gilbert was charged with intimidation and insolence. He was put in segregation on May 23, 1986 and the hearing was held on the charges on May 27, 1986. At the hearing, Gilbert was found guilty of both offenses and sentenced to four days in disciplinary segregation; however, he was given credit for the time served in segregation prior to the hearing and was returned to his housing unit.
 
 
 17
 The regulations provide that intimidation is considered a major offense, while insolence can be characterized as either major or minor depending upon the seriousness of the offense. 20 Ill.Admin. Code Sec. 504.50(c)(3)(A) and (B). The regulations further provide that the Adjustment Committee is to hear all cases involving major offenses, 20 Ill.Admin. Code Sec. 504.20, and that "no committed person shall be found guilty of any violation of these rules without a hearing before the Adjustment Committee or the Program Unit." Id.
 
 
 18
 Section 504.20 is mandatory in character. It establishes a determination that a prisoner is guilty of the charged offense as a prerequisite to the imposition of punishment against that prisoner. Consequently in this instance, where Gilbert was charged with a major offense that carried with it the possible punishment of placement in disciplinary segregation, a hearing before the Adjustment Committee and a finding of guilty were necessary prior to the imposition of punishment.
 
 
 19
 The regulation is directed at prison officials and it places restrictions upon the exercise of discretion in the decision to place an inmate in disciplinary segregation. As such, its apparent objective is to provide some minimal protection to the prisoner to insure that the state-created liberty interest in not being placed in disciplinary segregation absent a finding of guilt on a major offense is not arbitrarily withheld. By conditioning placement in segregation upon a finding of guilt in a pre-disciplinary hearing, the regulations create a liberty interest sufficient to invoke the protection of the due process clause, triggering the procedural requirements of Wolff.[2] Cf. Abdul-Wadood v. Duckworth, 860 F.2d 284-84 (7th Cir.1988) (The court noted that the provision of the Indiana Code concerning the imposition of discipline in prison arguably created a liberty interest, which triggered the protection of the due process clause and established the compliance with the procedural requirements of Wolff as prerequisites to disciplinary action.).
 
 
 20
 Both the district court and the state maintain, without discussing whether the regulations created a liberty interest in this case, that the procedural steps of Wolff have been satisfied; however, the record reflects that Gilbert's hearing was held after he was placed in segregation.
 
 
 21
 It should be noted that Sec. 504.40 of the Administrative Regulations of the Department of Corrections provides for the placement of a prisoner in temporary confinement status in some situations pending a disciplinary hearing; therefore it is possible that a predeprivation hearing might not have been required in this instance. See Hewitt, 459 U.S. at 476-77 n. 8. Nonetheless, the state has not argued that Gilbert was placed in temporary confinement and that argument is now foreclosed because of waiver. The disciplinary proceedings in this case did not comply with the predeprivation hearing requirement established in Wolff; therefore, the case is hereby remanded for further proceedings consistent with the finding of a due process violation.
 
 
 22
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 Ill.Rev.Stat. Ch. 38 Sec. 1003-8-7(d) and (e) might also have been considered to create a liberty interest in being placed in segregation only after a hearing establishing guilt. The statute, however, distinguishes between major and minor violations, based upon placement in segregation for more than seven days. In this instance, Gilbert was placed in segregation for only four days; thus, the due process requirements, if any, that are triggered by the statute are inapplicable in a case where, as here, the disciplinary violation is considered minor
 
 
 [2]
 Under Wolff, before disciplinary action may be taken against a prisoner, he is entitled to advance written notice of the charges against him, an opportunity to present documentary evidence and call witnesses, where it would not jeopardize institutional security to do so, and a written statement of the evidence upon which the factfinders relied and the reasons for the disciplinary action