**Jose SANTIAGO, Plaintiff,**

v.

**Michael P. LANE, Michael O'Leary, Billy Johnson, James Thieret, and Richard Guebert, Jr., as administrator of the Estate of Donald McDonough, Defendants.**

No. 85 C 5087.

United States District Court,
N.D. Illinois, E.D.

Aug. 26, 1988.

Edward Lewis, Jenner & Block, Chicago, Ill., for plaintiff.

Thomas A. Morrissey, Asst. Atty. Gen., Gen. Law Div., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, Judge.

### I. *Introduction*

On March 22, 1984, prison inmate Jose Santiago was stabbed and robbed by two other prison inmates at the Stateville Correctional Center (Stateville). He agreed to participate in the prosecution of the inmates who stabbed and robbed him, and, on April 11, Stateville officials transferred him to the Menard Correctional Center (Menard) for his safety. On April 18, the first day plaintiff was put into Menard's general prison population, he was stabbed in his unlocked cell by other prison inmates.

On May 24, 1985, plaintiff filed this action *pro se* under 42 U.S.C. § 1983 alleging that the defendants' failure to protect him at Stateville and at Menard amounted to cruel and unusual punishment in violation of his Eighth Amendment rights. On September 4, 1987, the court appointed counsel for plaintiff. Represented by court-appointed counsel, plaintiff then filed a seven-count amended complaint. In various counts, plaintiff sues prison officials and employees in their official and individual capacities.[1] He sues Michael P. Lane, Director of the Illinois Department of Corrections; Michael O'Leary, warden of Stateville; Billy Johnson, Chief of Security (Major) at Stateville; James Thieret, warden of Menard; and Richard Guebert, Jr.[2] All defendants have now moved for summary judgment on all counts pursuant to Fed.R. Civ.P. 56. For the reasons discussed, the Court finds that there are no genuine issues of material fact and rules that defendants are entitled to judgment as a matter of law.

## II. *Summary Judgment*

The purpose of summary judgment is to determine whether a trial will be necessary —"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genu-

ine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although the moving party has the burden of establishing that there is no genuine issue of material fact, he may discharge this burden by " 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see id.* at 2553 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on files, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); *see also* Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court*, 116 F.R.D. 183 (1987) (recent Supreme Court cases favor more liberal granting of summary judgment motions).

Once the moving party sufficiently has demonstrated the absence of a genuine issue, the opposing party must set forth specific facts in affidavits or otherwise show there are disputed material facts that must be decided at trial. *Celotex*, 106 S.Ct. at 2552–53; *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). If the nonmoving party has the burden of proof in the case, the evidence he or she presents in opposing the motion for summary judgment must be sufficient to meet

---

1. There is an important distinction between official capacity and individual capacity lawsuits. "A suit for [money] damages against a state official in his or her *official capacity* is a suit against the state for Eleventh Amendment purposes." *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir.1987) (emphasis added). The Eleventh Amendment bars a citizen from suing a state for money damages without its consent. *See Papasan v. Allain*, 478 U.S. 265, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986). The State of Illinois has not consented to suit. Ill.Ann.Stat. ch. 38, ¶¶ 1001–1201 (Smith–Hurd 1986). Therefore, Childers' suit is barred to the extent that it seeks money damages against the defendants in their official capacities.

"[A] suit for [money] damages against a state official in his or her individual capacity—meaning that the plaintiff seeks to establish personal liability against the defendant for acts he or she personally committed under color of state law— is not a suit against the state, and thus the Eleventh Amendment is not a bar to recovery." *Shockley*, 823 F.2d at 1070.

2. A second amended complaint was filed December 16, 1987, as a result of defendant Donald McDonough's death, for the purpose of adding Richard Guebert, Jr. as administrator of the Estate of Donald McDonough. Donald McDonough was Chief of Security (Major) at Menard.

that burden. *Anderson,* 106 S.Ct. at 1512 (standard for granting summary judgment same as that for granting directed verdict; court therefore must ask " 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' ") (quoting *Improvement Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, L.Ed.2d 867 (1872)).

Because the defendants brought this summary judgment motion, the Court must examine the evidence in a light most favorable to the plaintiff and draw all reasonable inferences in his favor. *Bowyer v. United States Dept. of Air Force,* 804 F.2d 428, 430 (7th Cir.1986).

### III. *Facts*

On March 22, 1984 at Stateville, a supervisor at the commissary was escorting plaintiff back to his cell from the commissary. Troeung Dep. at 73. On the way, two inmates attacked, stabbed and robbed plaintiff of a gold chain necklace. Plaintiff required hospitalization for multiple stab wounds to his head and chest. Compl., Ex. A. On April 11, 1984, as a consequence of plaintiff's cooperation with the authorities in identifying his attackers and participating in their prosecution, plaintiff was transferred to Menard for his safety.

Plaintiff spent the first seven days at Menard in an Orientation Unit so that prison officials could determine his security needs. During this period, Warden Thieret determined that Santiago "may require [protective custody]" during his stay at Menard. Thieret Dep. Ex. 1; Reception Classification Transfer Gallery Report. However, Santiago never requested and therefore was not given protective custody. On April 18, 1984, after seven days in the Orientation Unit, plaintiff was moved to East Cell House, cell 816. East Cell House, cell 816, is in Menard's general population. McDonough Dep., at 22. Within hours of his placement, two unidentified inmates threatened Santiago and unknown persons stole personal property from his cell.

Plaintiff quickly informed the Chief of Security at Menard, Major McDonough, of these threats and of his fears for his safety. Santiago Dep. at 176. Again, however, Santiago did not request protective custody. Major McDonough talked with plaintiff for approximately 45 minutes about the threats and his fears for his safety. Santiago Dep. at 177. McDonough then escorted Santiago back to his cell. Santiago Dep. at 182. On the way to the cell, McDonough discussed the plaintiff's safety with a known Latin King gang leader in East Cell House and asked the gang leader if the Latin Kings had a "problem" with Santiago. McDonough Dep. at 87. The gang leader said "no Latin King was going to hurt him. He's got no problem with us." McDonough Dep. at 86. Shortly after the Major left plaintiff in his cell, the inmates were called to evening meal. Santiago told his cellmate that he was not going to evening meal, and he asked his cellmate to close the cell door behind him. Santiago did not lock his cell door. He claims that, seconds later, several inmates attacked him in his cell with homemade knives and pipes. The attack resulted in serious injuries, including an eye injury which permanently impaired Santiago's vision.

### IV. *Analysis*

Santiago contends that defendants inflicted cruel and unusual punishment on him by failing to protect him. The Seventh Circuit has repeatedly held that failure to protect a prison inmate from attacks by other inmates can constitute cruel and unusual punishment in violation of the Eighth Amendment. *See, e.g., Richardson v. Penfold,* 839 F.2d 392 (7th Cir.1988); *Meriwether v. Faulkner,* 821 F.2d 408 (7th Cir. 1987); *Benson v. Cady,* 761 F.2d 335 (7th Cir.1985). However, a negligent failure to prevent such attacks does not amount to cruel and unusual punishment. *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) ("An express intent to inflict unnecessary pain is not required.... To be cruel and unusual punishment, [however,] conduct ... must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness, not inad-

vertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause....").

The Seventh Circuit has therefore required prison inmates to show that defendant prison officials, guards, and other prison employees acted with "deliberate indifference" to the inmate's need for protection. Exactly what amounts to "deliberate indifference" is not perfectly settled. *Compare Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir.1985) (criminal recklessness), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986) *with Benson v. Cady*, 761 F.2d 335, 339–40 (7th Cir.1985) (gross negligence); *see, e.g., Richardson*, 839 F.2d at 394–95 (citing both *Duckworth* and *Benson*, and applying *Benson*'s gross negligence standard).

There is considerable doubt whether *Benson*'s gross negligence standard should apply. *Duckworth* fully explains why gross negligence is not enough to constitute punishment (let alone cruel and unusual punishment), 780 F.2d at 652–53, and the Supreme Court has approvingly cited to *Duckworth* for its criminal recklessness standard.[3] *Whitley*, 106 S.Ct. at 1085; *see Childers v. Lane*, No. 85 C 7770 (N.D.Ill. May 2, 1988) (LEXIS, Genfed library, Dist. file) (discussing *Whitley* and *Duckworth*). Nevertheless, because the Seventh Circuit has most recently applied the *Benson* gross negligence standard, *Richardson*, 839 F.2d at 395, and because this Court finds that the decision on defendants' motion will not be affected by the difference between the standards, the Court will apply the *Benson* gross negligence standard to the facts in this case.

The Seventh Circuit explained the *Benson* gross negligence standard as follows:

It has long been established ... that negligence, evidenced by, *inter alia*, simple inattention or inadvertence, may not form the basis of an eighth amendment claim. A plaintiff must prove deliberate indifference, evidenced by either actual intent or reckless disregard. Although the term "actual intent" is self-explanatory, reckless disregard is not. *A defendant acts recklessly when he disregards a substantial risk or danger that either is known to him or would be apparent to a reasonable person in his position.* Recklessness is characterized by highly unreasonable conduct or a gross departure from ordinary care in a situation where a high degree of danger is apparent. The standard is an objective one....

Accordingly, we have held, in the context of an alleged failure by correctional officials to protect a prison from the risk of attack, that the plaintiff must prove that the officials knew or had reason to know there was a "strong likelihood" that violence would occur. Where assaults occur so frequently as to be "pervasive," a substantial risk of violence is apparent. Conversely, *random acts of violence provide no basis for a finding of a substantial, forseeable risk of harm.*

761 F.2d at 339–40 (citations omitted) (emphasis added).

### A. The Stateville Attack

■ Counts I through III involve the Stateville attack. In Count I, plaintiff alleges the defendants Lane, O'Leary and Johnson knew or had reason to know that the area of the attack was dangerous because other attacks had occurred there. Plaintiff, however, has presented no evidence that any other attacks ever occurred in the area before March 22, 1984.

Plaintiff also alleges in Count I that these defendants knew or should have known that the area of the attack was dangerous because it was concealed from direct view of the guard tower, and it is known to Stateville inmates as "death alley." Again, however, plaintiff presents no evidence, other than plaintiff's allegations in his own deposition that the area of the attack in Stateville was called "death alley." Further, it does not follow simply

---

**3.** *Duckworth* states that criminal recklessness can be shown where the defendant had "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." 780 F.2d at 653.

because the area where the attack took place is out of sight of a prison guard that the defendants knew or reasonably should have known that the attack was substantially likely to occur there. It is impractical, if not impossible, to provide personnel to guard every inch of a prison the size of Stateville. Plaintiff further argues that *after the attack* the defendants erected a fence "to enhance the security in that area." Plaintiff's Response to Defendant's Motion at 17 n. 10. However, this does not support plaintiff's argument that the need for further security in the area was known or reasonably should have been known to the defendants *before the attack.*

Lastly, plaintiff points to Warden O'Leary's testimony regarding "at least two other assaults in this particular area of the prison." Plaintiff's Response to Defendants' Motion at 15–16 (*citing* O'Leary Dep. at 98–100). Plaintiff, however, mischaracterizes O'Leary's testimony at those pages which he submitted in response to defendants' motion for summary judgment. First, Warden O'Leary does not recall whether any attacks occurred *prior* to Mr. Santiago's attack in the particular area. Second, Warden O'Leary states that another attack occurred, but adds, "It's not a part of that area. But I mean it's in that vicinity. But it's not in that complex." O'Leary's Dep. at 100.

Based on all the evidence submitted on Count I, the Court cannot infer that defendants knew or reasonably should have known that there was "a strong likelihood that violence would occur" while the Stateville commissary supervisor was escorting plaintiff back to his cell from the commissary. *Benson,* 761 F.2d at 339–40. Plaintiff has failed to set forth facts from which the Court can infer that defendants were deliberately indifferent to plaintiff's known need for protection. Accordingly, as to Count I, the Court finds that there are no genuine issues of material fact, and rules that defendants are entitled to judgment as a matter of law.

In Count II, plaintiff alleges that the defendants Lane, O'Leary and Johnson's failed to provide him with a trained escort back to his cell from the commissary. The state, however, is under no duty to provide personal bodyguards to every inmate. The Constitution does not require that prison officials provide every prison inmate with an individually trained guard as an escort through the prison. As already discussed, plaintiff has failed to set forth any facts from which the Court can infer that any of the defendants was aware of any particular danger to Santiago so that he would require special protection (let alone a specially trained escort). Furthermore, if Santiago believed that he was in danger, he could have requested protective custody. There is no evidence that he requested protective custody at any time. Accordingly, as to Count II, the Court finds that there are no genuine issues of material fact, and rules that defendants are entitled to judgment as a matter of law.

In Count III, plaintiff alleges that the defendants Lane, O'Leary and Johnson failed to inform the Menard officials that plaintiff belonged to an identifiable class of inmates who face serious risk of harm and need special protection. Again, however, plaintiff presents no evidence that the Menard defendants were unaware of plaintiff's prior history at Stateville. In fact, the evidence establishes that Menard officials conducted a seven-day orientation for plaintiff, reviewed his security needs, and determined that he might need protective custody. Thieret Dep. Exhibit 1. The facts, as presented by both the defendants and the plaintiff, are that Menard officials knew of plaintiff's security needs at Stateville and knew of his possible need for protective custody. Plaintiff, however, has not submitted any evidence that he requested protective custody and was refused. Plaintiff has failed to set forth any facts from which the Court can infer that the defendants were deliberately indifferent to plaintiff's known need for protection by failing to inform the Menard officials of plaintiff's security needs. All the evidence is to the contrary. Accordingly, as to Count III, the Court finds that there are no genuine issues of material fact, and rues that defendants are entitled to judgment as a matter of law.

### B. *The Menard Attack*

Counts IV and V involve the Menard attack. In Count IV, plaintiff alleges that defendant McDonough, the Chief of Security at Menard, failed to protect him after he learned of plaintiff's special need for protection in the general population at Menard's East Cell House. The evidence in the light most favorable to the plaintiff establishes that shortly after he was placed in East Cell House's general population, plaintiff was threatened by unidentified inmates and that personal property was stolen from his cell. Plaintiff immediately informed defendant McDonough that he was being threatened and that his property was stolen from his cell. McDonough talked with him for approximately 45 minutes about the threats and his fears for his safety, and then escorted him back to his cell. On the way, McDonough talked with a gang leader to determine plaintiff's need for protection. The gang leader told McDonough that the plaintiff was not in danger, and McDonough then finished escorting plaintiff to his cell. Shortly after McDonough left, plaintiff was attacked in his unlocked cell.

The Court finds that these facts taken in the light most favorable to plaintiff do not create a genuine issue of material fact whether defendant McDonough was deliberately indifferent to plaintiff's known need for protection. Drawing all reasonable inferences in favor of plaintiff, the Court finds that the facts show that McDonough was concerned about plaintiff's safety and attempted to provide him with protection. McDonough talked with plaintiff for 45 minutes about plaintiff's fears for his safety, escorted plaintiff back to his cell, and talked with a gang leader in an attempt to determine plaintiff's need for additional protection.[4] The facts also establish that plaintiff knew about the availability of Menard's protective custody, that if he requested it he would have automatically received it. There is no evidence that plaintiff ever requested protective custody at Menard and that McDonough (or any

other Menard defendant) denied it. Moreover, the facts also establish that plaintiff failed to lock his cell door, and that the attack could not have occurred if the cell door had been locked. Plaintiff's failure to lock his cell door was clearly something that McDonough (or any of the other Menard defendants) could not have anticipated. Plaintiff has failed to set forth any facts from which the Court can infer that McDonough was deliberately indifferent to plaintiff's known need for protection. Accordingly, as to Count IV, the Court finds that there are no genuine issues of material fact, and rules that defendant McDonough is entitled to judgment as a matter of law.

In Count V, plaintiff alleges the defendants Lane, Thieret and Guebert failed to "establish and implement policies and/or procedures" to protect inmates whose safety was at risk. Not only does plaintiff fail to present evidence to support the allegation, the allegation is in direct conflict with the evidence that has been submitted. The evidence that has been submitted shows that policies and procedures did exist at Menard to provide immediate emergency protective custody to inmates whose safety was at risk and that plaintiff knew about the availability of the protection. Accordingly, as to Count V, the Court finds that there are no genuine issues of material fact, and rules that defendants are entitled to judgment as a matter of law.

In Count VI, plaintiff alleges that he is presently in fear of his life and that continued incarceration under these circumstances constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Plaintiff is presently incarcerated at Shawnee Correctional Center. He presents no evidence to indicate that he is in danger at Shawnee. Accordingly, as to Count VI, the Court finds that there are no genuine issues of material fact, and rules that defendants are entitled to judgment as a matter of law.

---

**4.** There is no evidence that the gang leader whom McDonough talked to could or did have anything to do with the attack that occurred shortly thereafter.

**306**

## C. *The Pendent Illinois Law Claim*

In Count VII, plaintiff brings a pendent tort claim under Illinois law against all defendants for negligent, reckless, and unlawful conduct. In this count, plaintiff simply re-alleges all factual allegations in the first fifty-six paragraphs of the complaint. Neither party addresses this claim in their memoranda regarding defendants' motion for summary judgment. The Court declines to exercise its pendent jurisdiction and dismisses the count pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## V. *Conclusion*

For the reasons discussed, as to Counts I–VI, the Court finds that there are no genuine issues of material fact and that defendants are entitled to judgment as a matter of law. As to Count VII, the Court declines to exercise its pendent jurisdiction and dismisses this count pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).