Francis MILLER, Special Administrator for the Unopened Estate of Melvin L. Miller, Plaintiff–Appellee,

v.

Norman NEATHERY and Terrence Terrell, Defendants–Appellants.

No. 93–4032.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1994.

Decided April 11, 1995.

Steven S. Scholes (argued), McDermott, Will & Emery, Chicago, IL, for plaintiff-appellee.

Susan Frederick Rhodes, Asst. Atty. Gen. (argued), Rita M. Novak, Chicago, IL, for defendants-appellants.

Before POSNER, Chief Judge, and ESCHBACH and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Two correctional officers appeal from a jury verdict finding that they violated inmate Melvin Miller's Eighth Amendment Right to be free from cruel and unusual punishment. We hold that the jury instructions on deliberate indifference inadequately informed the jury that the officers could not be liable unless they actually knew of and disregarded an excessive risk to Mr. Miller's safety. *See Farmer v. Brennan,* ——. U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Accordingly, we reverse the judgment of the district court and remand the case for a new trial.

I

BACKGROUND

A. *Facts*

Melvin Miller was an inmate assigned to cell 3H09 of the segregation unit at Stateville Correctional Center. The 3H wing consisted of a long corridor with odd-numbered cells on one side and even-numbered cells on the

other. Cells 3H01 and 3H02 were closest to the security door that opened onto the wing. Between the cells and the security door were the showers used by prisoners. Beyond the security door was a "day room" that contained a series of storage closets. The security door between the 3H wing and the day room, as well as the doors in the day room itself, were electronically controlled by a correctional officer who sat in an adjacent control room. A large window between the control room and the day room allowed this officer to monitor both the day room and the 3H wing.

At approximately 2:00 p.m. on March 31, 1990, Mr. Miller was sitting in his cell. Correctional officer Norman Neathery was on duty in the control room. Officer Neathery allowed inmate William Adkins, who had been assigned to clean the showers, to leave the 3H wing and to return with cleaning supplies. Officer Neathery observed Adkins hook a hose up to a faucet in the day room and attach a bottle of cleanser to the hose. Officer Neathery then opened the door to the 3H wing and allowed Adkins to enter with the hose and cleanser. Adkins ambled down the corridor past the showers until he reached Miller's cell. He then began to douse Miller with the spray from the hose. Apparently, Adkins was retaliating because Miller had spat upon him earlier that week. Adkins continued to spray Miller until Terrence Terrell, a gallery officer assigned to the 3H wing, ordered him to stop. Mr. Miller complained that his eyes burned. He was taken to the prison infirmary for treatment. Mr. Miller subsequently filed a § 1983 claim against Officers Neathery and Terrell. Upon his subsequent death, from causes not related to the incident before us, his mother continued the litigation as administrator of her son's estate.

B. *Earlier Proceedings*

At trial, Ms. Miller's theory of the case was that Officers Neathery and Terrell stood idly by and watched as inmate Adkins sprayed Miller with chemicals for several minutes. With respect to Officer Terrell, the jury heard conflicting testimony concerning whether he had been present when Adkins initially arrived with the hose and had followed Adkins' instructions to leave the 3H wing, or whether he was in the control room with Neathery.[1] Similarly, witnesses disputed whether Terrell watched Adkins spray Miller for anywhere from five or six to fifteen minutes, or whether he ordered the spraying stopped as soon as he arrived on the scene. Officer Terrell testified that he could not remember Miller and that he had only vague memories of the spraying incident. He also stated, however, that he would never have allowed Adkins to assault Miller.

With respect to Officer Neathery, there was conflicting testimony concerning whether he should have evaluated Adkins' behavior in arriving to clean the showers at 2:00 p.m. as out-of-the-ordinary. In addition, Neathery testified that, as soon as he saw Adkins begin to spray Miller, he called Terrell and told him to investigate it. Officer Neathery admitted that he watched the entire spraying incident from the control room and surmised that the spraying continued for up to five minutes. Both Neathery and Captain Robert Griffin, who was the supervisor in charge of the 3H wing on the day of the incident, testified that it was against prison regulations for the control officer to leave the control room.

The jury returned a verdict against the defendants for $10,000 in compensatory damages, and assessed an additional $6,000 in punitive damages against Neathery and $14,000 against Terrell. Following the verdict, the officers moved for judgment as a matter of law, a new trial, or remittitur. The district court denied their motion, and they filed this appeal.

We need address only the defendants' contention that the case was submitted to the jury under erroneous instructions. Ms. Miller proposed a jury instruction on deliberate indifference based on our decision in *Benson*

---

1. Officers Neathery and Terrell, correctional officer Robert Griffin, and inmate Edmund Williams all testified before the jury. Inmates William Adkins and Bennie Cunningham refused to testify at the trial. The court allowed their depositions to be read to the jury.

*v. Cady,* 761 F.2d 335 (7th Cir.1985).[2] The officers objected to this instruction on the ground that it failed to define the term "recklessly," and offered two alternative instructions.[3] The court overruled the officers' objection and ultimately gave Ms. Miller's proposed instruction to the jury. In addition, the court provided the jury with a modified version of one of the instructions the officers had proposed.[4]

## II

## DISCUSSION

The officers' principal contention on appeal is that the district court erred in instructing the jury on deliberate indifference. The instruction did not, the officers argue, adequately explain the standard of recklessness necessary for the jury to find the officers liable. They contend that this instructional error was not harmless because the evidence of their liability was not clear cut. Ms. Mil-

ler responds that the instructions were proper. The instructions did not, she emphasizes, inform the jury that it could hold the officers liable based upon what they "should have known." Indeed, she continues, the district court explicitly informed the jury that it could not find the officers liable if they were merely negligent or grossly negligent. Ms. Miller further contends that any instructional error was harmless in light of the evidence against the officers, which, she notes, led the jury to impose punitive damages.

When reviewing jury instructions, our task is to determine "if the instructions as a whole were sufficient to inform the jury correctly of the applicable law. Reversal is warranted only if the instruction misguides the jury so much that a litigant is prejudiced." *Maltby v. Winston,* 36 F.3d 548, 560 (7th Cir.1994) (citations and quotations omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 2576, —— L.Ed.2d —— (1995). Thus, we must under-

---

**2.** Miller's proposed instruction stated:

The Eighth Amendment requires states and state officials to protect inmates from violent assault by other inmates. Under this requirement, prison officials cannot be deliberately indifferent to violent assaults by other inmates. "Deliberate indifference" means a knowing tolerance of such assaults or a reckless disregard of a substantial risk that such an assault will occur. Therefore, a prisoner's Eighth Amendment right to freedom from cruel and unusual punishment is violated if a prison guard intentionally or recklessly allows the prisoner to be assaulted by another inmate. R. 62, App. F (Plaintiff's Proposed Instr. No. 22).

**3.** The officers' proposed instruction No. 14 stated:

Mere negligence or inadvertence, or even gross negligence, on the part of defendants is not sufficient to hold the defendants liable for a violation of plaintiff's constitutional rights. If you find that the defendants were negligent or even grossly negligent your verdict must be for the defendants and against the plaintiff. R. 62, App. F (Defendants' Proposed Instr. No. 14).

The officers' proposed instruction No. 15 provided:

The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence in order to recover on his claim that defendants violated his constitutional rights on March 31, 1990.

First: The plaintiff must prove that the defendants intended that harm come to him as punishment

or

Plaintiff must prove that the defendants had actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendants [sic] failure to prevent it.

If plaintiff fails to prove either of the above, then you must find for the defendants and against the plaintiff.

R. 62, App. F (Defendants' Proposed Instr. No. 15).

**4.** The district court added the language "but you do not find that the defendants acted intentionally or with deliberate indifference" to the officers' proposed instruction No. 14, *see* Tr. IV at 505, and combined the resulting instruction with a portion of the officers' proposed instruction No. 18:

In determining whether the defendants were deliberately indifferent, you should judge their conduct not from hindsight but rather from what the defendants knew at the time of the incident. Mere negligence or inadvertence or even gross negligence on the part of the defendants is not sufficient to hold the defendants liable for a violation of plaintiff's constitutional rights. If you find that the defendants were negligent or even grossly negligent, but you do not find that the defendants acted intentionally or with deliberate indifference, your verdict must be for the defendants and against the plaintiff.

Tr. IV at 552–53.

take a two-part inquiry, examining first, whether the instruction misstates or insufficiently states the law, and second, whether any such error prejudiced one of the parties. *Id.*

The Supreme Court has long acknowledged that the deliberate indifference standard is relevant in Eighth Amendment challenges to prison conditions.[5] In *Farmer v. Brennan,* —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), however, it focused on the precise meaning that ought to be given that term in the Eighth Amendment context. In *Farmer,* the Court first noted that its Eighth Amendment precedents established that "deliberate indifference" lay "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at ——, 114 S.Ct. at 1978. The Court then recognized that the courts of appeals had "routinely equated deliberate indifference with recklessness," and approved of this interpretation. *See id.* However, it also recognized that "the term recklessness is not self-defining," *id.,* and that the circuits "had adopted inconsistent tests for 'deliberate indifference,'" *id.* at ——, 114 S.Ct. at 1976, apparently because they had relied upon the different standards for recklessness prescribed by the civil and criminal law.[6] Noting these different approaches, the Court rejected the objective standard based in the civil law. That approach focuses on whether a defendant "should have known" of the danger. Instead, the Court adopted the criminal law's subjective test for recklessness:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at ——, 114 S.Ct. at 1979. The Court emphasized that the Eighth Amendment proscribes only cruel and unusual punishments and stated that "an official's failure to alleviate a significant risk that he should have perceived but did not ... cannot under our cases be condemned as the infliction of punishment." *Id.*

Applying the mandate of *Farmer* to this case, we initially note that the district court's instruction did avoid many of the common pitfalls in this area. It did not explicitly instruct the jury that it could consider what the officers "should have known" in determining whether they were deliberately indifferent.[7] Indeed, the district court instructed the jury that it could not find the officers deliberately indifferent if it determined only that they had been negligent or grossly negligent.[8] Nevertheless, we cannot hold that the instructions sufficiently oriented the jury to its responsibilities with respect to this crucial standard of liability. The instructions failed to define or otherwise to explain the term "recklessly." A district court need not define a term when its use in jury instructions comports with its ordinary meaning. However, a court must define "'enigmatic terms' that leave the jury to speculate on their meaning." *Mayall v. Peabody Coal Co.,* 7 F.3d 570, 574 (7th Cir.1993). Our case law in areas other than the Eighth Amendment has acknowledged that lawyers and lay persons alike find it difficult to ascribe a precise meaning to the term "recklessly."[9] With respect to the Eighth

---

5. *See, e.g., Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

6. *Compare McGill v. Duckworth,* 944 F.2d 344 (7th Cir.1991) (adopting criminal law standard), *cert. denied,* 503 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992) *with Young v. Quinlan,* 960 F.2d 351 (3d Cir.1992) (employing civil law standard).

7. *Cf. King v. Fairman,* 997 F.2d 259, 262–63 (7th Cir.1993) (noting that district court erred in in-

structing jury that it could find prison officials liable for what they "should have known"); *McGill,* 944 F.2d at 349 (same).

8. *Cf. Farmer,* —— U.S. —— n. 4, 114 S.Ct. at 1978 n. 4 (describing "gross negligence" as a "nebulous" term "typically meaning little different from recklessness as generally understood in the civil law").

9. *See United States v. McAnally,* 666 F.2d 1116, 1119 (7th Cir.1981) ("The term 'reckless' covers a broad range of meanings to lawyers, and prob-

Amendment, earlier cases have approved instructions on deliberate indifference that may not have explicitly defined the term "recklessly." *See, e.g., Campbell v. Greer,* 831 F.2d 700, 702 (7th Cir.1987). However, those instructions, unlike the district court's instruction in this case, made clear that the jury could not find the defendants liable absent evidence of criminal recklessness, *i.e.,* evidence that the defendants had "actual knowledge of impending harm" that they "consciously and culpably refused ... to prevent." *See id.* In any event, given the Supreme Court's explicit and precise mandate in *Farmer,* we believe that it now is clear that an instruction such as the one given in this case cannot be said to guide adequately the deliberations of a jury. The given instruction did not inform adequately the jury that, at a minimum, it had to determine that the officers knew of and disregarded an excessive risk to inmate health or safety. The officers had to be aware of facts from which the inference could be drawn that a substantial risk of harm existed, and they also had to draw the inference. *See Farmer,* —— U.S. at ——, 114 S.Ct. at 1979.

Having determined that the district court's instruction inadequately framed a crucial distinction for the jury, we must now determine whether this inadequacy was unfairly prejudicial to the officers. At the outset, we cannot accept Ms. Miller's claim that the jury's assessment of punitive damages necessarily demonstrates that it found the officers "reckless" as that term is employed in *Farmer.* In instructing the jury on punitive damages, the district court noted that:

> Punitive damages may be awarded in the discretion of the jury to punish a defendant for acting with malice or willfulness or for acting with callous and reckless indifference to the rights of others....

Tr. IV at 554. This instruction allowed the jury to assess punitive damages if it found the officers exhibited "reckless indifference." We cannot say that the jury's assessment of punitive damages under this instruction nec-

essarily demonstrates that it found the officers deliberately indifferent as that term has now been defined for purposes of Eighth Amendment analysis. *See Soderbeck,* 752 F.2d at 290 (noting that the term "reckless indifference" is not self-defining).

Moreover, our independent examination of the record leads us to the conclusion that it is not at all certain that the jury understood that a verdict for the plaintiff must rest at least on a determination that each defendant actually knew that Mr. Miller was facing a substantial risk of serious harm and failed to take reasonable steps to abate that risk. The conflicting testimony at trial was susceptible to various interpretations on crucial issues of location and timing. Exactly when each of the officers became fully aware of the nature of the threat and how much time elapsed between that realization and the taking of effective action were issues that required the jurors to determine a great deal more than the credibility of individual witnesses. The jurors also had to consider the possibility that, due to the differences in location and attention, the most accurate account of the situation might not be the one supplied by a single witness but might indeed be an amalgam of various accounts. Indeed, the district court specifically instructed the jury that it ought to consider such a possibility. Tr. IV at 548. Under these circumstances, it would be imprudent for us to determine that the lack of sufficient guidance in the instructions did not contribute significantly to the jury's conclusion.

Accordingly, we reverse the judgment of the district court and remand the case for a new trial.

REVERSED AND REMANDED.

---

ably an even broader one to laymen."); *cf. Soderbeck v. Burnett County,* 752 F.2d 285, 290 (7th Cir.) ("It is no doubt regrettable that the instructions to the jury did not define 'reckless indiffer-

ence' as the legal meaning of the term is unlikely to be obvious to the average juror[.]") (internal citations omitted), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985).