70 F.3d 1274
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Wayne PHILLIPS, Plaintiff-Appellant,
v.
Captain EDGETON, et al., Defendants-Appellees.
 No. 94-3122.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 17, 1995.*
Decided Nov. 22, 1995.
 
 Before FLAUM, MANION and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff-appellant Wayne Phillips, an inmate at the Pontiac Correctional Center, brought this pro se civil rights action under 42 U.S.C. Sec. 1983, alleging that the defendants, various current and former officials at Pontiac, violated his Eighth Amendment right against cruel and unusual punishment. Phillips claims that the defendants acted with deliberate indifference to his safety from repeated assaults by another inmate. The defendants filed a motion to dismiss, which the court converted to a motion for summary judgment when Phillips attached exhibits to his response. On August 23, 1994, the court entered summary judgment for the defendants. Phillips appeals. We reverse and remand.
 
 
 2
 * Phillips alleges that, beginning in early 1993, several of the Pontiac guards campaigned against him by spreading rumors that he was a "snitch" and deliberately exposing him to the danger of serious injury at the hands of another inmate.[1] The first injury occurred on July 30, 1993, as officer Lind escorted Phillips in handcuffs past the cell of an inmate named Stewart (whom Phillips apparently refers to obliquely as "the guy in cell 151"). Stewart asked Phillips to pass some tobacco to the prisoner in the next cell. When Phillips drew near, Stewart stabbed him in the abdomen and said, "I got you, snitch." After Phillips received medical treatment for the wound, he learned that Stewart had stabbed another inmate the week before the attack and had attempted to stab someone the day before.
 
 
 3
 Two days later, on August 1, 1993, shortly before Phillips was taken to the recreation yard, Officer Shivers told him, "Be sure to bring your own smokes, because you know what happened last time." This was evidently a veiled reference to the previous assault. Lieutenant Harvey then brought Phillips to the yard, and twenty minutes later brought out Stewart. Phillips told Harvey not to put Stewart in the yard because he did not want to be stabbed again. Harvey replied that Stewart had been shaken down for weapons and advised him, "You stay away from him and he'll stay away from you." Phillips attacked Stewart as soon as he was uncuffed, allegedly to preempt Stewart from obtaining a weapon from one of his associates.
 
 
 4
 When Phillips was punished for the attack, the disciplinary committee acknowledged that Harvey had disobeyed a posted memorandum instructing the prison staff not to put Phillips and Stewart in the yard together. Nevertheless, the altercations between Stewart and Phillips continued. On February 5, 1994, Stewart allegedly stabbed or struck Phillips near the ear. Phillips states that defendant Shivers told him "you ducked too slow" and refused to discipline Stewart. On March 7, 1994, another correctional officer, Booker, saw Stewart strike Phillips in the face with a cup of excrement. Phillips filed a grievance regarding these attacks, which the committee denied as unsubstantiated. Finally, on June 16, 1994, Stewart, after passing through a shakedown, produced a sharpened ten-inch piece of steel and stabbed Phillips, puncturing his lung and causing internal bleeding. Stewart was subsequently transferred to another facility.
 
 II
 
 5
 We review a decision granting summary judgment de novo. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A motion for summary judgment shifts the burden to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues for which the nonmovant bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The evidence submitted in support of the nonmovant's position must be sufficiently strong that a jury could reasonably find for the non-movant. Brownell v. Figel, 950 F.2d 1285, 1289 (7th Cir.1991). Where the merit of a complaint involves subjective issues such as credibility, motivation, and state of mind, and where critical evidence lies within the control of the movant, particular caution must be exercised in evaluating a summary judgment motion. See, e.g., Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir.1992) (genuine issue of material fact as to state of mind of prison officials precludes summary judgment on Eighth Amendment claim).
 
 
 6
 Appellant first contends that because he is untrained and illiterate, the district court erred by refusing to appoint counsel. Indigent civil litigants have no constitutional or statutory right to be represented by a lawyer; 28 U.S.C. Sec. 1915(d) merely provides that "[t]he court may request an attorney to represent any such person unable to employ counsel." The district court relied on the five-factor test set forth in Maclin v. Freake, the purpose of which is to assess the difficulty of the case and the ability of the litigant to present it. See Maclin v. Freake, 650 F.2d 885, 887-89 (7th Cir.1981). We have since collapsed the test into a simple question: "[G]iven the difficulty of the case, did the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel have made a difference in the outcome?" Farmer v. Haas, 990 F.2d 319, 322 (7th Cir.), cert. denied, 114 S.Ct. 438 (1993). We will override the district court's denial only in the "extreme case" where it should have been obvious before the trial began that the difficulty of the issues or the incapacity of the litigant "would make it impossible for him to obtain any sort of justice without the aid of a lawyer and he could not procure a lawyer on his own." Id. at 323.
 
 
 7
 Here the district court found that Phillips had alleged no physical or mental disability that might preclude him from investigating or presenting the case, and that neither the legal issues nor the evidence were complex. We cannot say the court erred in its determination. Although counsel might have been helpful, this is not the "extreme case" where the litigant could not obtain "any sort of justice" without the assistance of counsel. Id.
 
 
 8
 Phillips's remaining claims center on the defendants' alleged failure to protect him from repeated assaults by the inmate named Stewart. The Eighth Amendment requires prison officials to protect prisoners from assaults by other inmates. A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the amendment. See Helling v. McKinney, 113 S.Ct. 2475, 2480 (1993); Goka v. Bobbitt, 862 F.2d 646, 649-50 (7th Cir.1988). The Supreme Court recently held that deliberate indifference is established "only if [a prison official] knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S.Ct. 1970, 1984 (1994). Deliberate indifference signifies a conscious recklessness akin to that found in criminal law: while the defendant need not have actual intent or purpose, he must have greater culpability than negligence and is held liable only for what he actually knew, not what he constructively "should have known." Id. at 1979; Miller v. Neathery, 52 F.3d 634 (7th Cir.1995). Negligence and even gross negligence are not actionable under the Eighth Amendment. King v. Fairman, 997 F.2d 259, 261 (7th Cir.1993).
 
 
 9
 Whether a prison official was subjectively aware of and disregarded a substantial risk of serious harm may be proved indirectly, from either a single serious incident or a series of lesser incidents. If, for example, inmate threats occur so frequently as to be "pervasive," or an inmate is a member of an identifiable class for whom risk of assault is "a serious problem of substantial dimensions," creating an institutional "reign of terror," a court may infer deliberate indifference. Walsh v. Brewer, 733 F.2d 473, 476 (7th Cir.1984). An inmate's failure to notify officials of the risk of harm may not be fatal; circumstantial evidence of an obvious risk of harm may be sufficient to infer that the officials possessed actual awareness. Farmer, 114 S.Ct. at 1981-84.
 
 
 10
 In this case, Phillips's allegations appear to establish the defendants' subjective recklessness towards his safety, creating a genuine dispute of material fact and precluding summary judgment. The district court's discussion of the evidence is hampered by the fact it addressed only the July 1993 stabbing and the immediately subsequent yard altercation. The court incorrectly concluded that Phillips "does not indicate that any further attacks or attempted assaults have taken place." On the contrary, Phillips repeatedly described the February, March, and June 1994 assaults in his handwritten memoranda opposing summary judgment. He also submitted as exhibits a number of prison grievance reports filed by himself and other inmates, as well as the affidavit of inmate Troy Lewis describing the June 1994 stabbing.[2]
 
 
 11
 It is also significant that these materials undermine the defendants' assertion and the district court's conclusion that the August 1993 encounter was mere negligence. Phillips stated in his opposition that the yard is only approximately 20 X 30 feet, that inmates are placed there for five hours at a time, that the weapons searches are superficial, and that in any event it is common for inmates to obtain weapons from other inmates while in the yard. According to the Lewis affidavit, this is precisely what happened in June 1994; someone smuggled a weapon into the yard and passed it to Stewart (whom Lewis calls "BoBo"), who employed it to stab Phillips yet again. In this light, Harvey's statements in August 1993 that Stewart had been shaken down and that Phillips should simply stay away from him are troubling. The following ten months were marked by steadily escalating violence between the same two inmates, culminating in the June 1994 stabbing. Finally, Phillips asserted that "many knife cases can be established through discovery" and submitted a "motion for production of documents" before the district court granted summary judgment. The district court did not address these issues.
 
 III
 
 12
 We conclude that the district court erred in considering only part of the evidence and that genuine issues of material fact remain concerning the existence of defendants' deliberate indifference to inmate safety. On remand, to aid in the resolution of these issues, the district court may wish to consider appointing counsel to represent Phillips.
 
 
 13
 REVERSED and REMANDED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Defendant Louis Lowery is the assistant warden at Pontiac, a maximum security Illinois state prison. Defendants Cary Edgeton, Anthony Harvey, Robert Shivers, and Jennifer Woodruff are correctional officers at the facility. The defendants Craig Koechig, L. Lind, and Harold Tarrants are former employees of the facility
 The district court did not address Phillips's claims against Koechig, Lind, and Tarrants, reasoning that it lacked personal jurisdiction because they were never served with process. Nor did the court dismiss them pursuant to Federal Rule of Civil Procedure 4(m). These defendants no longer worked at Pontiac when the summonses were issued, and the United States Marshals Service, which is obligated to serve process on behalf of prisoners proceeding in forma pauperis, failed to make any additional effort to locate them. We note that under our decision in Graham v. Satkoski, 51 F.3d 710 (7th Cir.1995), the Marshals Service's failure would entitle Phillips to an extension of time for service. See also Sellers v. United States, 902 F.2d 598, 602 (7th Cir.1990). Neither party has addressed the status of these defendants on appeal.
 
 
 [2]
 The court may have been misled by defendants' error in reading the exhibits. Defendants concluded that the documents referred to the June 1993 tobacco-related stabbing, although they clearly discuss the yard stabbing in June 1994. Defendants thus dismissed one grievance report as "only establish[ing] what [the grievant] Henry Robinson saw when plaintiff was stabbed by the inmate who asked for tobacco." (Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss at 3.) The defendants and the district court ignored the Troy Lewis affidavit