Nelida **HOISINGTON**, as Parent and Natural Guardian of Camara Hoisington, an Infant Under the Age of 14 Years, Plaintiff,

v.

**COUNTY OF SULLIVAN** and Sullivan County Department of Social Services, Bernadette Gilmore, Vincent Gilmore, Barbara Faust and Eloise Adams, Defendants.

No. 95 Civ. 10653(CM).

United States District Court, S.D. New York.

June 23, 1999.

Bernadette Gilmore, Monticello, NY, defendant pro se.

Vincent Gilmore, Monticello, NY, defendant pro se.

Barbara Faust, Hollis, NY, pro se.

Eloise Adams, Hollis, NY, pro se.

MEMORANDUM DECISION AND ORDER GRANTING COUNTY OF SULLIVAN AND SULLIVAN COUNTY SOCIAL SERVICES' MOTIONS FOR SUMMARY JUDGMENT DISMISSING THE FEDERAL CLAIMS AND DECLINING TO EXERCISE PENDENT JURISDICTION OVER THE REMAINING STATE CLAIMS AS AGAINST ALL DEFENDANTS

McMAHON, District Judge.

*Background Facts*

In November 1992, Nelida Hoisington, chronically inebriated and facing imminent arrest and imprisonment, voluntarily turned over custody and control of her two daughters, Camara and Cyre, to Bernadette and Vincent Gilmore. The Gilmores were not employees of Sullivan County or foster parents in the county's foster care program. Indeed, it was precisely to keep her children out of a governmentally-selected foster home that Nelida turned to her friends, the Gilmores, whose child-rearing abilities she held in high regard. She was then incarcerated in the Sullivan County jail.

In January 1993, the Sullivan County Department of Social Services petitioned the Family Court of Sullivan County for a determination that Camara and her sister were neglected children. On June 25, 1993, the Family Court entered an Order of Fact–Finding and Disposition, which declared that Nelida Hoisington failed to provide proper supervision for the two children. The Court placed the girls in the care and custody of Bernadette Gilmore (with whom they had been living for

Robert J. Camera, Finkelstein, Levine, Gittelsohn & Tetenbaum, Newburgh, NY, Nanette E. Decea, Cooper, Leibowitz, Royster & Wright, Elmsford, NY, for Camara Hoisington.

Michael Frey, Appelbaum, Bauman & Appelbaum, Esqs., Liberty, NY, for County of Sullivan, Sullivan County Department of Social Services.

some eight months) and directed that the Department of Social Services "... is to have supervision of Respondent and the household where the children reside ..." and "... is to provide preventive services to the household where the children reside...." *See* Order of Fact–Finding and Disposition, attached as Ex. D to Defendant's Motion for Summary Judgment.

On or about March 21, 1994, Camara Hoisington was burned in a bathtub while in the care and custody of Bernadette Gilmore. Mrs. Gilmore placed Camara in a bathtub with the water running and left the bathroom momentarily to prevent another child in the home from falling off a bed. While she was out of the bathroom, a third child turned on the water in the kitchen sink. This allegedly caused the temperature of the water running into the tub to rise, which scalded Camara.

Plaintiff commenced this action against Sullivan County and its Department of Social Services, alleging that they violated Camara's constitutional rights in violation of 42 U.S.C. § 1983. The Sullivan County defendants are also named in a common law negligence claim. Plaintiff asserted various common law causes of action against the individual defendants; there are no Federal claims pending against any of the four individuals.

In April 1999, this Court appointed Nanette Decea, Esq., of the law firm of Cooper & McCann, as guardian *ad litem* for Camara, after being advised that proceedings were pending in Travis County, Texas, to terminate Nelida's parental rights due to her continuing neglect of Camara.

*The Motions for Summary Judgment*

In November 1998, Sullivan County and its Department of Social Services moved for summary judgment dismissing the Federal claims against them and either dismissing the State law negligence claim on the merits or asking the Court not to exercise supplemental jurisdiction over the State causes of action. That motion, which is opposed by Plaintiff, is currently before the Court. It will be granted only if there is no genuine issue of material fact and the moving parties are entitled to judgment as a matter of law, Fed.R.Civ.P. 56(c). Of course, this Court must resolve all ambiguities and draw all reasonable inferences in favor of Camara, the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). But unless there is sufficient evidence—of a non-conclusory and non-speculative nature favoring the non-moving party—for a jury to return a verdict for that party, summary judgment is warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Having reviewed the record and the legal arguments of counsel, I conclude that the motion to dismiss all of Plaintiff's claims against the Sullivan County Department of Social Services must be granted, as must the motion to dismiss Plaintiff's § 1983 claims against Sullivan County.

*Motion by Defendant Sullivan County Department of Social Services*

The Department of Social Services' motion for summary judgment dismissing all claims against it, under both Federal and State law, is granted. Federal courts must look to state law to determine whether a government department may be sued. Fed.R.Civ.P. 17(b). Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit, *see, e.g. Adams v. Galletta*, 966 F.Supp. 210, 212 (S.D.N.Y.1997); *Umhey v. County of Orange*, 957 F.Supp. 525, 530–31 (S.D.N.Y. 1997), and no claims lie directly against the Department. In order to forestall the filing of further claims against the DSS and the motion practice that will inevitably result, the Court agrees to exercise supplemental jurisdiction over the common law claim against the Department (Count 2),

for the sole purpose of dismissing it with prejudice.

*Motion to Dismiss Federal Claims Against Sullivan County*

■ To recover damages under 42 U.S.C. § 1983, Plaintiff cannot simply allege that the local government, through an employee or agent, inflicted some injury on Camara. Rather, she must demonstrate that Camara was deprived of her constitutional rights pursuant to some policy, practice or custom of the County. *Monell v. Department of Social Svcs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

There are two ways to approach that question: by determining whether Plaintiff has adduced evidence establishing the existence of a policy, practice or custom, *see, e.g., Monell*, 436 U.S. at 694–95, 98 S.Ct. 2018; *Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 72 (2d Cir.1992) (holding that city's legislative decision to eliminate supernumerary police officer was municipal policy and therefore, under *Monell*, the town was not entitled to immunity), or by looking at whether any violation of the Constitution took place at all, *see, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (holding that government officials may be subject to civil liability if their conduct violates clearly established statutory or constitutional rights of which a reasonable person should be aware); *Lewis v. Cowen*, 165 F.3d 154, 166 (2d Cir.1999) (granting city officials qualified immunity because the plaintiff, a spokesperson for the state lottery agency, did not have a First Amendment right to disregard his supervisor's instructions); *Montville v. Lewis*, 87 F.3d 900, 902–03 (7th Cir.1996) (holding that city building inspectors were entitled to qualified immunity because the inspectors had a reasonable basis for believing that a building search was consented to and did not, therefore, violate the Fourth Amendment). Defendants rely on the former argument. They note that the "poli-

cy, practice or custom" identified by Plaintiff is Sullivan County's alleged failure to train its social workers and foster parents about the dangers of scalding and how to prevent it, and they contend that this failure (assuming it to be true) does not amount to "deliberate indifference" to the rights of County inhabitants, which is the showing required for lack of training to rise to the level of an actionable policy or practice. *See Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir.1992).

While there would appear to be much to commend the County's argument, it is not necessary to reach it. Viewing the allegations of the complaint most favorably to Camara, she does not allege, or provide evidence to support any finding of, a *constitutional* violation. That being so, she cannot recover under § 1983.

The gravamen of Plaintiff's complaint is fourfold: first, that Gilmore, an individual who had been placed under the supervision of the Department of Social Services by the Sullivan County Family Court, negligently permitted Camara to be scalded; second, that the County was aware of the risk of scalding generally and negligently failed to train its employees in how to prevent it; third, that the County was aware of a particular risk to Camara because the building inspector was advised about the Gilmore's quirky hot water system; and last, that the County, which inspected the home during Camara's placement there, negligently failed to check the condition of the water heater while being aware that there was a problem with the hot water system. On the record before me, at least the third (and key) part of Plaintiff's argument is factually fallacious. While Bernadette Gilmore testified at her deposition that *she* knew use of hot water in one location would cause the temperature to rise in the bathroom—indeed, she testified that she herself had been burned by just such an incident—there is no evidence whatsoever that the County Build-

ing Inspector who came to the Gilmore home was ever made aware of this particular problem. To the contrary, Mrs. Gilmore admitted under oath that she never advised the inspector about this tendency. *See* Defendants' Reply Aff. ¶ 17. Thus, while Plaintiff tries to convince the Court that the County had actual notice of a condition that presented a particular danger in the Gilmore home and ignored it, there is no evidence to support that position.

Therefore, insofar as the County is concerned, Plaintiffs are left with the following argument: because of the well-known dangers to small children from scalding, Sullivan County's failure to train its caseworkers and foster parents in scald prevention techniques (which, for purposes of this motion only, will be deemed true) amounted to deliberate indifference to the rights of the foster children of Sullivan County, and Camara in particular.[1] The County's response to this is, in effect, to deny that Camara was in foster care or that it had assumed any responsibility for her—notwithstanding the fact that it was under a Family Court order to supervise Mrs. Gilmore and the household, as well as to provide preventive services—on the ground that her mother, not the County, placed the child with the Gilmores. It therefore contends that it was sufficiently a stranger to Camara to fall within the Supreme Court's ruling in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

The fascinating question of whether *DeShaney* controls here is also one I can leave for another day. The County is correct that is has no § 1983 liability to Camara in this instance, but the reason is that the girl has suffered no constitutional injury. It is well settled that not every legally cognizable injury inflicted by a state employee or agent acting under color of law violates the Fourteenth Amendment. *See Paul v. Davis*, 424 U.S. 693, 699, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Negligence by a State actor cannot be the basis for imposing § 1983 liability on a municipality. *See Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); rather, a Plaintiff must demonstrate "deliberate indifference"—i.e., that the actor had actual knowledge of impending harm which he consciously refused to prevent. *See Miller v. Neathery*, 52 F.3d 634, 639 (7th Cir. 1995). This means that the consequences of accidents caused by State actors do not rise to the level of a constitutional violation actionable under § 1983 unless the plaintiff can demonstrate that the official knew an accident was imminent but consciously and culpably refused to prevent it. It is insufficient to show that the State was aware of a recognizable but generic risk to the public at large. *See, e.g., Hill v. Shobe*, 93 F.3d 418, 421–22 (7th Cir.1996); *Medina v. City of Denver*, 960 F.2d 1493, 1496 (10th Cir.1992). *See also Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (holding that once the State learns that a third party poses a special danger to an identified victim whose personal liberty has been restrained by the State, and indicates its willingness to protect the intended victim against that specific danger, a special relationship arises between the State and the intended victim that can, in appropriate circumstances, give rise to § 1983 liability). If awareness of a general risk is all that the evidence supports, then the State actor cannot be held liable under § 1983— and the municipality that the actor repre-

---

1. There can be no suggestion here that the County was negligent in placing Camara with Bernadette Gilmore, not only because Nelida Hoisington herself made the placement, but also because the County did ascertain that neither of the Gilmores had ever been reported as abusive to a child prior to the final ruling of the Family Court affirming the placement. *See* Exhibits 1 and 2 to Defendants' Reply Affidavit. The Complaint contains an allegation to this effect, but as I read the record on the motion, Plaintiff makes no such argument and offers no evidence to support any such contention.

sented cannot be held liable for failure to train.

*Hill v. Shobe, supra,* illustrates this principle perfectly, and on facts that are virtually indistinguishable from those of this case. In *Hill,* an Indianapolis police officer, driving an RMP while on duty, ran a red light at a high rate of speed without having his lights on or his siren flashing. An innocent citizen died in the resulting accident. His estate sued the officer, as a State actor, and the City of Indianapolis, under § 1983. The plaintiff's theory was that the officer had exhibited deliberate indifference to the lives of citizens on the street by driving recklessly, and that the City had failed to train its employees to recognize and avoid the consequences of reckless driving. The Seventh Circuit, affirming the District Court's dismissal of plaintiff's § 1983 claim, determined that what had happened to plaintiff's decedent, while tragic, was not a constitutional violation, noting, "[t]he fact that a public official committed a common law tort with tragic results fails to rise to the level of a violation of substantive due process . . . ." *Hill,* 93 F.3d at 421 (citing *Daniels v. Williams,* 474 U.S. 327, 333, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). The panel acknowledged that the officer's driving presented a risk, but not one directed to plaintiff, or that rose to a level greater than "a generalized risk to the public at large." Because the panel ruled that plaintiff's decedent had not been deprived of his constitutional rights, it dismissed the failure to train claim against the City as well, saying, "[b]ecause Hill's death did not result from a violation of the federal constitution, this claim cannot stand." *Hill,* 93 F.3d at 422.

In this case, viewing the facts most favorably to Plaintiff, Camara was injured due to someone's negligence. No evidence has been called to my attention to indicate that the scalding was intentional. There is nothing in the record to indicate that any representative of the County was aware of any specific risk to Camara from the Gil-more's hot water system. Of course there exists a risk of scalding—and not just to children—whenever hot water is used; one need not consult an expert, as Plaintiff has, to establish that fact. But that is a generalized risk, not a specific danger to Camara.

As noted above, the Building Inspector was not told that turning on the faucet in one room caused the water to get hotter in another. He tested the water system by running the hot water for a period of time and inserting his finger in the stream of water. *See* Defendant's Reply Aff. ¶ 8. That test failed to reveal any problem. Perhaps Camara would not have been burned if a County representative had inspected the water heater, as Plaintiff suggests. But the Inspector's failure to conduct as thorough an inspection as Plaintiff deems necessary is nothing more than negligence, assuming, *arguendo,* that it is actionable at all.

Holding that this unfortunate accident rose to the level of a Constitutional violation " . . . would diminish the civil rights statutes to the equivalent of a body of general federal tort law, and open the courts to a flood of litigation, which the framers of § 1983 clearly did not intend." *Hill,* 93 F.3d at 422 (citing *Daniels,* 474 U.S. at 332, 106 S.Ct. 662; *Paul,* 424 U.S. at 701, 96 S.Ct. 1155).

Because no constitutional violation occurred in this instance, the Court need not reach any of the arguments propounded by the County for dismissal.

The First Cause of Action, brought against Sullivan County pursuant to 42 U.S.C. § 1983, is hereby dismissed, with prejudice.

*The Pendent State Law Claims*

Having dismissed the Federal claims, the Court declines to exercise jurisdiction over the pendent State law claims. Therefore, the Second Cause of Action against Sullivan County, and the Second, Third and Fourth Causes of Action against the private defendants, are dismissed without prejudice. Plaintiff—or, more properly,

Camara's guardian *ad litem*—may, if she chooses, bring them anew in the New York State Supreme Court for Sullivan County, within the savings period provided by N.Y. C.P.L.R. § 205.

This constitutes the decision and order of the Court.